WILL HENSLEY v. WESTERN NORTH CAROLINA LUMBER COMPANY.

(Filed 8 December, 1920.)

**Employer and Employee—Master and Servant—Negligence—Safe Place to Work—Tools and Appliances—Order of Vice Principal—Inspection.**

> Evidence that defendant sent logs down the mountain side in a "chute" to its sawmill, and at a depression requiring the logs to be handled in order to get them to the next incline, the vice principal ordered the plaintiff, an inexperienced 17-year-old lad, to assist in moving the logs with a pevie, while an unruly horse drew them forward by a chain attached to the end of the log with a swamp hook; and that the use of this horse had theretofore been found dangerous for such purpose, and that the chain was too small, and broke, inflicting injury upon the plaintiff as the unruly horse surged along the toe-path: *Held*, the defense was untenable which limited the question of actionable negligence to the question of the chain being a simple tool, and as to whether the defect and danger arising from its use should have been better known to the plaintiff, and that defendant should have been notified thereof; as this disregarded the different elements of negligence arising under the other evidence in the case. As to whether it was defendant's duty to have inspected the chain, *Quaere?*

APPEAL by defendant from *Harding, J.*, at August Term, 1920, of YANCEY.

Plaintiff sued to recover damages for a personal injury, alleged to have been caused by negligence of the defendant, who was engaged in operating a band sawmill, in the manner described by the witnesses.

Plaintiff contended that the evidence tended to show the following facts:

The plaintiff, at the time of his injury, was employed by the defendant, and directed by his foreman to aid in rolling logs into a "chute" or slide built of split logs, which was used to convey the logs from the mountain slopes to defendant's band mill, which was constructed at the foot of the mountain. The "chute" was built to fit the grade of the ground, so there were, at various places, depressions where the logs would stop in the "chute." At what is known as landing No. 1 there is such a depression that the logs stop, and have to be removed by horse power or by tackle. The plaintiff, a boy of 17 years, was directed to leave the place where he was at work by his foreman, and help Riddle, the driver, in moving the logs from the depression above described. Riddle drove the horse, and young Hensley was required to take a pevie and help start the log, while the horse surged against the chain, which was attached to a swamp hook, at the end of the log, where the plaintiff was required to work. The horse was a large, strong horse. A toe-path was built at this place, made of small logs, so as to give the horse a better hold, the surface of the toe-path being very rough. The horse was wild and unruly, and did not·pull true. He was so unruly that he would jump across the slide from the toe-path and would make unexpected surges against the chain, and had to be worked with double lines. One employee, who previously drove the horse at the point where plaintiff was injured, quit the work rather than undergo the danger of driving him, and he notified Jack Henderson, secretary of defendant company, that the horse was dangerous. The plaintiff was young, and a green hand, had not done that kind of work before, and was not warned of the dangers incident thereto. The chain furnished by defendant at this point, for the purpose of jerking or "bucking" the logs from the depression to a point where they would run by gravity, was a small chain, and was too small and weak for the work required. It had been made for a tackle block chain, so made with small links that it would go through the rings of the tackle blocks. It was also an old chain; had been used in a tackle block, and was badly worn, both on the outside of the links, where it was readily visible, and also inside, where it could be detected. It bore evidence of having been previously broken, and the ring or link welded and repaired. The plaintiff had never examined the chain at all, and had never helped in this kind of work before. While plaintiff was undertaking to aid in starting the log, by prizing at the end with a pevie, at the point where the chain went through a ring at the swamp hook, the driver undertook to drive the wild and unruly horse over the corduroid log toe-path, the horse backed over the singletree and made a violent and wild surge against the chain, which broke, and the large

horse was thrown forward with great force at one end of the broken chain, and the other end of the broken chain was thrown backward with equal force, where plaintiff was at work with the pevie, and hit plaintiff in the head, crushing his skull and so injuring him that a large portion of his brain had to be removed.

Defendant contended that the evidence disclosed the following facts:

That at the time of the injury complained of, it was operating a band sawmill, and the method adopted for bringing logs from the woods to the mill was to place them upon a slide made of logs from eighteen to twenty-four inches in diameter, about one-third of the log being sawed off from one side, and the logs so placed that these sawed surfaces were facing each other, thus making a hollow chute, and when these sawed logs were placed end to end it made a trough. Logs were rolled into this trough, or chute, and when the chute was not of sufficient grade for the logs to slide of their own momentum in the chute, after it had been oiled by pouring oil on the sawed surface of the logs, a horse was hitched to the log by means of a chain attached to a hook, and the hook placed in the rear end of the rear log, so that the horse would pull against the chain while walking beside the log to which the chain was attached, and beside the chute. When the logs would reach a point in the chute that they would slide by themselves, the "swamp hook" would drop out from the rear end of the log and the logs would go on down the chute of their own momentum. The plaintiff was injured while agitating one of the logs at the rear end, with a cant hook, and the horse pulling upon the chain hitched to the said log; the chain being doubled, running through an open link to the "swamp hook." The chain broke, one end of it flew around and hit the plaintiff above the ear and caused the injury. The parties differ as to the age of the chain. Defendant's evidence tended to show that he had purchased, and then had in use, the chain which broke, and which was a 3-B, 5/16 inch, steel-tested, electrically welded chain, and, according to all the evidence, this was the best chain that could be purchased in the market. This chain was a comparatively new chain, and arrived at the defendant's mill on 28 March, 1919, and the injury occurred on 8 April, 1919, so, as defendant contends, the chain could not have been used longer than from 28 March until 8 April, 1919.

The defendant raised but one question on this appeal, which is that the tool (or chain) was a simple tool; that the defendant was not required to inspect it; that if it became defective after the employees began using it, they would know this first of all, and unless the defendant was notified of the defect which occurred later, it would not be liable; that there is no evidence showing any knowledge of any defect on

the part of the defendant. The defendant abandons all exceptions in the record, except those relating to the chain, contending that the same is a simple tool.

Verdict and judgment for the plaintiff, and defendant appealed.

*A. Hall Johnston and Charles Hutchins for plaintiff.*
*Watson, Hudgins, Watson & Fouts for defendant.*

WALKER, J., after stating the case: There was testimony which tended, more or less, to support the two opposite contentions. The defendant abandons all exceptions except the one in regard to the chain, and as to that it contends that it was a small tool, requiring no special inspection from the master, and being so, it was the duty of the plaintiff to discover any defect and report it to the defendant, for he was in a better position than was the defendant to know of any defect, as he handled it all the time it was in use. But this contention is fully met and overcome by testimony that the chain was too small for that kind of work, where it was subjected to a heavy strain, and was not strong enough to withstand it. One witness, an expert, testified that the chain was too small for that kind of work. He said, "I do not think that this chain was sufficient for the work required to be done, it was a tackle block chain, made small to go through the rings of a tackle block." There was also other evidence tending to show that defendant had not furnished a safe place for plaintiff to work, or a safe way for doing his work, so that the mere breaking of the chain, and the lack of proper inspection by the defendant, were not the only evidences of negligence. We do not mean to decide that it was not the defendant's duty to inspect the chain, or that it comes within the class of small tools. It is not necessary that we should do so.

The case of *King v. R. R.,* 174 N. C., 39, seems to be directly in point. It cites *Wright v. Thompson,* 171 N. C., 88, and *Rogerson v. Hontz,* 174 N. C., 27, where the Court held, as stated in the syllabus of the case, that the rule relieving an employer from liability for a personal injury caused by a defective implement of an ordinary kind to be used in an ordinary way, furnished by him to his employee for the work required of him, has no application when he knew, or should have known, of the defects by reasonable inspection, and that its use threatened substantial injury; and where an employer furnished an inexperienced employee a defective cant hook, under his protest, to unload heavy logs from a flat car, and the employee was injured shortly thereafter by reason of the breaking of the implement which he had been instructed to use, a judgment of nonsuit is improperly granted, and the issue of defendant's actionable negligence is for the determination of the jury.

In *Rogerson v. Hontz, supra,* known as the *"Cant hook case,"* the hook was insufficient, in size and strength, for rolling the heavy logs. It is well settled that the master is required to furnish tools, machinery, and implements suitable for the work to be done, and to provide a reasonably safe place and proper rules and methods for doing it.

There was evidence that defendant failed to perform the duty he owed to the plaintiff, apart from that in respect to the defect in one of the links, which was specified by the defendant's counsel as insufficient to charge him with negligence.

No error.