OSCAR Y. SMITH v. SEABOARD AIR LINE RAILWAY COMPANY.

(Filed 26 October, 1921.)

**1. Pleadings — Scope of Inquiry — Instructions — Appeal and Error — Amendments.**

The plaintiff, in his action to recover damages of the defendant for a personal injury alleged to have been negligently inflicted on him, is restricted to those acts of negligence he has specifically alleged in his complaint, or amendments thereto allowed by the trial court, affording the defendant opportunity to amend his answer and prepare to meet the new phase of the case; and a charge of the court is reversible error when it goes beyond this, and into extraneous matters, to the defendant's prejudice.

**2. Instructions—Material Omissions—Appeal and Error.**

A material omission in the charge of the trial court to the jury of the principles of law involved upon a phase of the case he has assumed to instruct them upon is affirmative and reversible error.

**3. Employer and Employee—Master and Servant—Safe Place to Work— Defects—Actual and Implied Knowledge—Inspection.**

The defect in an apparatus which an employer has furnished to his employee to do the work required of him is not sufficient of itself to charge the employer, the defendant in the action, with negligence, causing the injury, for the plaintiff must show that the defect was either known to the defendant or had existed so long that the law will impute such knowl-

edge through the failure of the defendant to have discovered it by reasonable inspection required of the employer at proper intervals to secure safety in its use by his servants.

**4. Same—Railroads—Instructions—Appeal and Error.**

Where an employee of a railroad required to place water in its locomotive at a water tank, has been injured while doing so by an explosion in the pipe through which the water was being carried for the purpose, and the evidence is conflicting as to whether the employee was acting therein in the proper manner and whether the employer had had the apparatus properly inspected, or should have previously discovered the defect of which it was unaware by the use of ordinary care, a charge of the court omitting these requisites upon the issue of defendant's negligence, and in effect making the defendant's liability to depend altogether upon whether or not there was a defect that proximately caused the injury, is reversible error.

**5. Same—Federal Employers' Liability Act.**

Under the Federal Employers' Liability Act it is not every accident which may occur in causing a personal injury to an employee while working with the machinery and appliances furnished by the employer, a railroad company, for him to do the work that will make the employer liable, but only for those "due to its negligence" under the rule of actual or implied notice.

**6. Employer and Employee—Master and Servant—Negligence—Rule of the Prudent Man.**

It is not the absolute duty of an employer to furnish his employee a reasonably safe place for the latter to do his work, the rule being that he must provide for him such a place, under the rule of the prudent man, in the exercise of ordinary care.

**7. Actions—Parties—Dismissal as to One Party—Statutes—Prosecution as to Party.**

In an action against a railroad company and the Director General of Railroads, following the opinion of the Supreme Court of the United States, there is no liability upon the railroad company, but the action may be continued against the Director General under the provisions of C. S., 602, that a several judgment may be entered. *Kimbrough v. R. R., ante,* 234, cited and applied.

·APPEAL by defendant from *Connor, J.,* at the June Term, 1921, of WAKE.

Plaintiff brought this action to recover damages for personal injuries alleged to have been sustained at Sanford, N. C., 18 July, 1919, by being thrown from a stand-pipe while putting water in the tank of an engine. Plaintiff testified that he was fireman on one of the engines being operated on the Seaboard Air Line Railway while under Federal control, and that it became necessary for the engine to take water at Sanford; that the engine was properly placed, and he pulled the stand-pipe to the tender and around to the manhole and leaned against the stand-pipe to

hold it down, and, as he pulled the lever to release the water, the stand-pipe exploded and threw him backwards. In explaining his position when leaning against the stand-pipe plaintiff testified that he assumed a sitting posture. Plaintiff also testified that he had used this stand-pipe before the time of his injury; that he would pull the lever about half way over and the water would come with a rush. The lever referred to was on top of the spout of the stand-pipe and was used to regulate the flow of water through the pipe and into the tank of the engine.

It will perhaps be better, or at least more accurate, to state the substance of the testimony for plaintiff substantialy in his own language, or rather in that of his counsel, as it is set forth in their brief, which we now do:

The plaintiff testified that at the time of his injury he was temporarily performing the duties of a railroad fireman; that he was a locomotive engineer by trade, and was employed on the Seaboard Air Line Railway on 18 July, 1919. The plaintiff testified in part as follows: The engineer ran up to the stand-pipe. He told me to take water on the tender, and I went to take water. He stopped the engine right even with the stand-pipe. I pulled the stand-pipe to the tender and around to the man-hole and leaned against it to hold it down, and as I pulled the lever to release the water the stand-pipe exploded and threw me backwards. The stand-pipe that I was leaning against exploded. . . . Before 18 July, I took water the same way I was taking it when I got hurt. There was nothing unusual before this time. . . . I had seen different firemen take water at the same pipe, all the time. . . . I was taking water on this day the same as they were. I was taking it in the same manner as I had authority to take it. I was working the lever with my left hand. The lever works the valves that let the water flow in the stand-pipe. . . . And I pulled it out to get water. . . . As you pull it toward you it opens the valve and the water comes in. . . . There was no place on the side of the spout that you could put your foot on and hold the spout down in the tank. I was not aware of the fact that there was more pressure there than at any other stand-pipe. . . . I pulled the lever up halfway, and, still holding it down, I took a seat on the side and pulled the lever over, and that is when it exploded. That is the position I had always assumed. I mean by the explosion that the pipe burst, and there was compressed air and water and it all came out at the same time. It was not solid force of water. There was a gush of air. The air and water came out at the same time. Q. What kind of noise was it making? A. A blow and a sudden jerk. The blow was very strong and powerful. I had never heard anything

like that at a stand-pipe before. It all happened at the same time. I do not know how high the stand-pipe was thrown by the explosion. The last I remember it was going up and I was going with it. Q. You stated, Mr. Smith, on cross-examination, that some time before that in resting on it you had felt it go down and come up—explain to the jury what it was doing? A. There was no force as there was that day. I don't suppose it ever raised four or five inches. I was leaning there on it and pushed it down. I could not have done it on the day of the explosion. ·

The defendant's witness, J. L. Kelly, testified in part.: Something broke loose. I don't know what it was. It pitched him 15 feet high. . . . A whole lot of stuff went up there with him. It exploded and he went up in the air. I did not see anything but a little water come out of that explosion. No; that little water would not have exploded with the tank that way. No; I did not hear the water running in the tank before that. I saw the piece break just as it was pulled down. I don't know whether he had hold of the lever at that time or not.

The defendant's witness, Yow, testified in part: I guess this stand-pipe exploded as soon as he pulled the lever. Yes; it suddenly exploded. . . . It was about as quick as lightning. He had not more than got it down when he reached up and got the lever. Just as he pulled it, it exploded. I was struck with the water. This whole arm was up straight. The explosion took place as soon as this man pulled the lever down. From where they picked him up I should say he went 20 feet into the air. . . . I think he was thrown 50 feet.

The defendant's witness, Gold, testified in part: That the column was 12 inches thick; that the ball was made of brass and was an inch thick. The ball was crushed and drawn in. . . . Mr. Owens, the pump repairer, was working on the same main that supplied this stand-pipe the day of Mr. Smith's injury. . .· . Mr. Owens had the immediate supervision and upkeep of this stand-pipe.

Defendants offered the testimony of two eye-witnesses of the accident, neither of whom was connected in any way with the defendants, and they both testified that plaintiff straddled the spout of the stand-pipe and attempted to operate the lever while in that position. M. H. Gold, witness for defendants, testified that at the time of this accident he was division engineer in charge of the stand-pipe; that he went to Sanford on the day this accident occurred, and after the accident; that he had been there two days before and the stand-pipe was in very good condition; that there were two grab-irons on the spout by which you could pull it around, and there was sufficient room on the grab iron for a fireman to place his foot and hold the spout in position; that a fireman

could stand on the tender and place his foot on the grab-iron and hold the pipe in place; that by pulling the lever on top of the spout you could control the opening of the valve in the pipe so as to control the flow of water; that by pulling it gradually the water would flow gradually; that if the lever was pulled up suddenly that would throw the entire pressure on the stand-pipe, and that would have a tendency to straighten the pipe out at the end. This witness also testified that he examined the stand-pipe after the accident, and that there was no weak places in it.

D. T. Owens, witness for plaintiff, testified that he was pump repairer, and on the North Carolina division of the railroad; that he remembers this identical stand-pipe; that he gave Mr. Gold notice of the condition of the stand-pipe before the accident; that every time he talked to Mr. Gold he spoke to him about the stand-pipe; that he told him he did not like it because it would give him trouble; that they were too weak for the pressure. The witness further testified that the trouble with the stand-pipe was that it was leaking. He said that he worked the lever on this stand-pipe and that by working it slowly it would let the water in gradually, and if you pulled the lever suddenly that would cause the water to rush up suddenly. This witness further testified that the stand-pipe was all right before plaintiff was injured; that it was in good working order, and there was nothing about it that was broken; that he inspected it on the fourth of the month before the accident and put it in good condition; that after the accident he could find no defect except such as was caused by the spout flying up; that the tank is 70 feet high at Sanford.

At the conclusion of the evidence plaintiff admitted that he was employed in interstate commerce at the time of his injury, and, over defendants' objection, was permitted to amend his complaint so as to allege that defendants were engaged in interstate commerce, and that he was employed in such commerce.

The judge charged the jury, among other things, as follows: "I instruct you that if you find by the greater weight of the evidence in this case that this plaintiff, in the performance of his duty, after the engine had been placed opposite the water tank, took down the spout and placed the mouth of it in the tender in order that the water might flow, and further find that the usual and customary way was to pull the lever, and then find, gentlemen of the jury, that the plaintiff leaned his weight upon the spout in order to hold it in position, and you further find that when the water did come that it came in such a rush and force as to throw the young man in the air, and further find that the violence with which the water came was due to some defect in the apparatus, or was

due to carelessness on the part of the defendant, and if you find that such negligence was the direct and proximate cause of the injury, you will answer both of the two issues 'Yes.' "

The jury returned a verdict in favor of plaintiff on all the issues, and fixed the damages at $40,000.

Judgment thereon, and defendant appealed, assigning errors.

*Armistead Jones & Son and Douglass & Douglass for plaintiff.*
*Murray Allen for defendants.*

WALKER, J., after stating the case:   The plaintiff alleged several acts of negligence in respect to the condition of the water tank at the time of the accident, and, of course, he is restricted to those specified.   If he desired to show others, the proper way was to ask the court for an amendment, giving the defendants reasonable opportunity to amend their answer and prepare to meet the new phase of the case.   Being thus confined to his own statement of the particular acts of negligence, it was error for the court to instruct the jury as appears in the above excerpt from the charge.

But there is a still more fatal defect in this instruction.   The judge was attempting to state the law on this branch of the case, and there is nothing better settled than the rule that he must state it correctly, for any material omission is an affirmative error.   A defect in apparatus is not sufficient of itself to charge the defendant with liability for negligence, unless the defect was either known to it or had existed so long that the law will impute such knowledge, when the defect could have been discovered by a reasonable inspection of the machinery and implements, which should be made by the master at proper intervals to secure safety in their use by his servants.   This element of liability was entirely omitted from this instruction, and not even a reference made to it. The cases have thoroughly established this principle in the law of negligence.   The following cases will show that this is so : *Hudson v. R. R.,* 104 N. C., 491; *Railway v. Barrett,* 166 U. S., 617; *Patton v. Railway,* 179 U. S., 658; *Railroad v. McDade,* 135 U. S., 554; *Blevins v. Cotton Mills,* 150 N. C., 493; Labatt on Master and Servant, sec. 119 *et seq.* And to these cases we add a recent one (which was carried from this Court by writ of error to the Supreme Court of the United States), in which this same doctrine is discussed, and formulated according to the view of it as above stated.   *S. A. L. Rwy. Co. v. Horton,* 233 U. S., 492 (58 L. Ed., p. 1062), and especially the same case, on second appeal, 239 U. S., 595 (60 L. Ed., p. 458), where a water gauge was alleged to be defective and exploded.   In the *Hudson case,* 104 N. C., 491, we held that "The burden is upon the servant who sues his master for damages,

resulting from the use of defective machinery furnished by the latter, to establish *prima facie,* (1) that the machinery was defective; (2) that the defects were the proximate cause of the injuries; and (3) that the master had knowledge of them, or might, by the proper exercise of care and diligence, have acquired such knowledge." Now, in this case, when the testimony is closely and carefully examined, it will be found that it is both ways as to this point. There is perhaps some evidence from which the jury might fairly and reasonably infer that if the tank or the pipe leading to it was defective, or that there was air in the latter which should have been expelled before using it, the defendant either knew it or should have known it by the exercise of ordinary care, and there also is testimony to the contrary, and some tending to show that the tank was put in good condition by repairs to it before the accident, and was in such condition just before the explosion took place. In view of this conflict of testimony, the case should have been submitted to the jury with proper instructions as to the law. A carrier is not liable for every accident that may occur and injure one of its employees, but, by the very terms of the Federal Employers' Liability Act, only for those "due to its negligence." Federal Employers' Liability Act, by Richie (2 ed.), page 122, sec. 53, and cases in notes. Extended comment is not required to further demonstrate the correctness of this rule as to the duties of the master to his servant, with respect to machinery and implements furnished to him by the latter, nor the citation of other authorities, though there are very many decisions of this and other State courts, and of the highest Federal courts, that might be added to those we have cited above. We will, though, refer especially to *Texas & Pac. R. R. Co. v. Barrett,* 166 U. S., 617 (41 L. Ed., 1136), in this connection.

There is also another exception to which we should advert, as it may be repeated unless attention is directed to it. The court instructed the jury "that, under the law, it was the duty of the defendant to furnish to the plaintiff, while in its employment, a safe place to do his work and reasonably safe implements with which to do the work required of him." His Honor corrected this charge afterwards by instructing the jury that he should have told them that the defendant was required to furnish only "a reasonably safe place for the servant to do his work," but left it otherwise intact. It is not the absolute duty of the master to furnish even a reasonably safe place for the servant to do his work, but the true and correct rule is that he must use ordinary care to provide for him such a place. *Choctaw O. & G. R. C. v. McDade,* 191 U. S., 64; *Garner v. R. R.,* 150 U. S., 359; *Washington & G. R. Co. v. McDade,* 135 U. S., 570; *B. & O. R. R. v. Baugh,* 149 U. S., 368. See, also, *Powell v. Anderson S. & T. P. Co.,* 256 Pa. St., 618, and *Kryner v.*

*Gold Mining Co.,* 184 Fed., 43. *Justice Brewer* said in *Patton v. Texas & Pac. R. R. Co.,* 179 U. S., 658 (45 L. Ed., 361): "It is also true that there is no guaranty by the employer that place and machinery shall be absolutely safe. *Hough v. Texas & P. R. R. Co.,* 100 U. S., 213, 218 (25 L. Ed., 612, 615); *Baltimore & O. R. R. Co. v. Baugh,* 149 U. S., 368, 386 (37 L. Ed., 772, 780); 13 Sup. Ct. Rep., 914; *Baltimore & P. R. R. Co. v. Mackey,* 137 U. S., 72, 87 (39 L. Ed., 624, 630); 15 Sup. Ct. Rep., 491; *Texas & P. R. R. Co. v. Archibald,* 170 U. S., 665, 669 (42 L. Ed., 1188, 1190); 18 Sup. Ct. Rep., 777. He is bound to take reasonable care and make reasonable effort; and the greater the risk which attends the work to be done and the machinery to be used, the more imperative is the obligation resting upon him. Reasonable care becomes, then, a demand of higher supremacy; and yet, in all cases it is a question of the reasonableness of the care; reasonableness depending upon the danger attending the place or the machinery. The rule in respect to machinery, which is the same as that in respect to place, was accurately stated by *Mr. Justice Lamar,* for this Court, in *Washington & G. R. R. Co. v. McDade,* 135 U. S., 554, 570, 34 L. Ed., 235, 241, 10 Sup. Ct. Rep., 1044. *Justice Lamar's* statement of the law in this respect in 135 U. S., 554, referred to by *Justice Brewer,* is a strong and very lucid exposition of the subject, but it is not necessary that we should insert it verbatim here, as it can easily be found in the volume where it is reported, and it is substantially covered by *Justice Brewer's* own version of the principle, as stated above. It also will be found stated by us in *Marks v. Cotton Mill,* 135 N. C., 287, and the same case, 138 N. C., 401, where it was held: In all questions of negligence the standard by which to measure the liability of the employer to the employee, is that followed by the ideally prudent man. What was held in the first of the two cited cases (135 N. C., 290) is directly in point here, that "The employer does not *guarantee* the safety of his employees. He is not bound to furnish them an absolutely safe place to work in, but is required simply to use reasonable care and prudence in providing such a place. He is not bound to furnish the best known machinery, implements and appliances, but only such as are reasonably fit and safe and are in general use. He meets the requirements of the law if, in the selection of machinery and appliances, he uses that degree of care which a man of ordinary prudence would use, having regard to his own safety, if he were supplying them for his own personal use. It is culpable negligence which makes the employer liable, not a mere error of judgment. We believe this is substantially the rule which has been recognized as the correct one and recommended for our guide in all such cases. It measures accurately the duty of the employer and fixes

the limit of his responsibility to his employees. *Harley v. B. C. M. Co.,* 142 N. Y., 31. This Court has said that all machinery is to some extent dangerous, but the fact that it is dangerous does not of itself make the owner liable in damages. It is the negligence of the employer in not providing for his employees reasonably safe machinery and a reasonably safe place in which to work that renders him liable for any resulting injury to them." That case was cited and the principle it states approved by the Court in *Pressly v. Yarn Mills,* 138 N. C., 413, and has been cited and approved in numerous subsequent cases.

There are other exceptions worthy of consideration if the result depended in any way upon them, but it does not, and we will not prolong this opinion in order to foreclose them.

The action should be dismissed as to the Seaboard Air Line Railway Company, as the Supreme Court of the United States has recently decided that there is no liability as to it. *Mo. Pac. R. R. Co. v. Ault,* Adv. Opinions of that Court, p. 647, No. 16, 1 July, 1921. The plaintiff may continue, though, to prosecute the action against the Director General, under our present procedure, as will appear from C. S., sec. 602, where it is provided specially that a several judgment may be entered. This is discussed fully in the dissenting opinion of the writer in *Kimbrough v. A. C. L. Ry. Co. and Director General, ante,* 234, the Court being unanimous on this point. Reference is made to that opinion to avoid repetition.

There was error, in the respects indicated, because of which another jury must be called.

New trial.