Plaintiff alleged that he was injured by the negligence of the defendant. Defendant denied negligence, and pleaded plaintiff's contributory negligence and assumption of risk. The issues of negligence, contributory negligence, assumption of risk, and damages were answered in favor of the plaintiff. Judgment on the verdict, and appeal by the defendant.
The plaintiff's statement of facts is substantially as follows: "The plaintiff, at the time of his injury, was in the employ of the defendant as a carpenter, having had no experience in concrete work. The defendant was engaged in erecting a brick and concrete building, and had laid the concrete floors in the building, same having been poured in forms made of wood and supported by 2-inch boards held up by timbers 4 x 4. For some reason it became necessary to drill holes through the second floor of the building, and the defendant's superintendent Cooper ordered the plaintiff and a fellow-servant to do so. The concrete of which the floor was composed had been set up three or four days, but the part where the plaintiff was working and in which the holes had to be drilled, had been run two or three weeks before. The wooden forms were still underneath the concrete. In order to drill the holes and do the work required of the plaintiff, the defendant furnished him a drill made of some of the reinforcing iron left over from use in the concrete. The plaintiff was aided in this work by a fellow-workman — one held the drill and the other hit it with a hammer. The drill was 2 1/2 or 3 feet long and about 1 1/2 inches in diameter. One end was flattened out and sharpened, the flat end being wider than the body of the drill. The plaintiff and his fellow-servant, after drilling one or two holes, were undertaking to get the drill out of the hole where it had become stuck. It could not be driven through because the top had become battered and flattened so that it would not pass through the hole; neither could it be pulled back, as the point had become stuck in the wooden form underneath the concrete. The defendant's superintendent, Cooper, gave orders for the plaintiff to go underneath and knock the drill back, while his fellow-servant stayed on top and held it. In obedience to this order the plaintiff went underneath, got a step-ladder, went upon it, and with a hammer weighing about 2 1/2 pounds struck the end of the drill; whereupon, with the first stroke a piece flew off the drill and hit him in the left eye, putting it out. It *Page 486 
was not light underneath the floor. His eye had been in good condition up to that time."
The complaint states four phases of the defendant's alleged negligence, but at the trial the plaintiff relied mainly on the asserted negligent failure to provide for him a suitable drill and a safe place in which to work. After the plaintiff's witnesses had testified, the defendant, declining to offer evidence, made a motion to dismiss the action as in case of nonsuit. In support of the motion it now insists (1) that the injury was an accident; (2) that even if the general rule prescribing the employer's duty as to furnishing implements applies where the tools are of simple construction, still, granting the defendant's negligence in the respects complained of, there was no proximate causal relation between such negligence and the plaintiff's injury; and (3) that the plaintiff, disregarding the safe way of driving back the drill, chose the dangerous way by using a hammer for that purpose.
The master is not an insurer of the servant's safety, but he is required to exercise ordinary care to provide reasonably safe instrumentalities wherewith, and reasonably safe places wherein, the servant shall do his work. In the discharge of this duty he meets the requirements of the law if he exercises that degree of care which a man of ordinary prudence would exercise having regard to his own safety, if he were providing such appliances or places for his own personal use. Marks v. Cotton Mills,135 N.C. 290; Nail v. Brown, 150 N.C. 535; Mercer v. R. R., 154 N.C. 401. In Mercer's case, supra, Allen, J., said: "This duty applies alike to the simple and the complicated tools, but the authorities agree that after performing this duty, the law does not impose the same obligations with reference to the two classes of tools. When the tools and appliances are complicated, the employer must inspect them from time to time, and must see that they are maintained in a reasonably safe condition." Fearington v.Tobacco Co., 141 N.C. 83. With reference to simple tools, the question of the employer's responsibility may generally be referred to his actual or constructive knowledge of defects from which injury may reasonably be expected to result. This principle has been frequently applied; as, for example, where the employer had provided a hammer that was not suitable for the work entrusted to the employee (Young v. Fiber Co., 159 N.C. 376); where a pin intended to secure a wheel on the spindle of a truck had been materially worn by long use (Cotton v. R. R., 149 N.C. 227); where a *Page 487 
ladder used to clean out a vat had become worn and defective (Reid v.Rees, 155 N.C. 231); and where a defective chisel had been furnished for cutting slack rivets from an oil tank (Mercer v. R. R., supra). That there had been, in some of these cases, an opportunity for inspection is unimportant, for the reason that in the instant case the defendant not only manufactured the drill, but provided material (454) that was not suitable for the purpose. Rogerson v. Hontz,174 N.C. 27; Thompson v. Oil Co., 177 N.C. 279; Hensley v. Lumber Co.,180 N.C. 573. So likewise as to the question whether the servant who made or sharpened the drill was a competent workman. The master's duty with regard to providing reasonably safe and suitable tools is not delegable, and such servant must be regarded as the representative oralter ego of the defendant, and not as a fellow-servant of the plaintiff.Chesson v. Lumber Co., 118 N.C. 60; Bolden v. R. R., 123 N.C. 617;Tanner v. Lumber Co., 140 N.C. 479; Harmon v. Contracting Co.,159 N.C. 28; Mincey v. R. R., 161 N.C. 470; Clements v. Power Co.,178 N.C. 55.
The defendant contends, however, that the hurt inflicted could not have been foreseen, that it was an accident, and that there was no causal relation between the alleged negligence and the plaintiff's injury. As we have said, there was evidence tending to show that the defendant negligently furnished a defective drill, and that the plaintiff, in obedience to instructions attempted to "knock it back through the boards or wood, . . . whereupon a piece flew off the drill and hit him in the left eye." The defendant says that the plaintiff only assumed that the particle of steel came from the drill; but the jury found it to be a fact. The defendant says that the proximate cause of the injury was the plaintiff's negligent use of the hammer; but this was a matter for the consideration of the jury. The principle discussed in Martin v. Mfg. Co., 128 N.C. 264, is not applicable where the employer has actual or constructive knowledge that the defect in a simple tool which he provides is of a kind importing menace of substantial injury (Thompson v. Oil Co., supra); and where there is evidence of concurring negligence on the part of the plaintiff and of the defendant the question of proximate cause must ordinarily be referred to the jury. True it is that where the danger is obvious and the servant has as good an opportunity as the master of seeing the danger, and can avoid it by the exercise of reasonable care, the servant cannot recover against the master for injuries received in consequence of conditions which constituted the danger. Labatt on Master and Servant, sec. 333; Mincey v. R. R., supra. But upon the evidence here we cannot hold as a conclusion of law that the alleged negligence of the plaintiff was the proximate cause *Page 488 
of his injury. Isaiah Miles testified that the drills in general and approved use for work in concrete were made of octagon and tool steel; that the drill furnished the plaintiff was made of reenforcing steel, or scrap metal, and was more easily battered than one made from octagon steel — "if you hit it on the end it is going to break somewhere." And Costner said that after he had sharpened the drill its point was scaly and blue. The plaintiff's alleged negligence, the safe and (455) the dangerous way of doing the work, and the cause of the injury were not exclusively questions of law. The evidence necessarily carried to the jury the various contentions of the parties, and his Honor therefore properly declined the defendant's motion to dismiss the action.
In view of what has been said, it is unnecessary to refer to the defendant's request for a peremptory instruction upon the second and third issues beyond saying that each of them embraced elements that were determinable only by the jury; and the defendant's prayer for the further instruction that it was the duty of the plaintiff to inspect the drill omits all reference to the exercise of due care, and, when considered in connection with the plaintiff's right to assume that the defendant had performed its duty, it was properly declined. Nor can we concur in the contention that the defendant was prejudiced by his Honor's observation that "a plaintiff may be guilty of contributory negligence and yet that negligence would not be the proximate cause of the injury." The word "contributory" was inadvertently used by his Honor in defining "proximate cause," and not in his instructions upon the second issue; and to conclude that the jury were misled would be practically equivalent to an abolition of the established rule that instructions to the jury must be considered in their entirety. Maney v. Greenwood, 182 N.C. 583; In re Hinton's Will,180 N.C. 206. The necessity of adhering to this rule is apparent when we consider the specific instruction that the plaintiff could not recover if his negligence proximately caused or contributed to his hurt.
The seventh and eighth exceptions are addressed to the following instruction: "Now the law says, gentlemen, that it is the duty of the master, if he employs a servant, to furnish him a reasonably safe place to work, and if he does not, and the plaintiff is injured by the failure, by reason of the master failing to furnish the servant a reasonably safe place to work, or the employee a safe place to work, and if such failure is the proximate cause of his injury, then the law says he can recover if the defendant, the employer, was guilty of negligence. The law also says that it is the duty of the master to furnish the servant with reasonably safe tools and appliances with which to do the work, and, as a *Page 489 
general rule, if he does not and he is injured by reason of his failure to furnish him reasonably safe tools and appliances to work with, if he is injured, the law says the party can recover." We think these exceptions should be sustained. In Bailey's Law of Personal Injuries (2 ed.), sec. 162, the character and extent of the master's duty are defined as follows: "The underlying doctrine of the master's duty towards his servant, with respect to the character of the appliances furnished and place of work, as well as other duties that rest upon him, is that of the exercise of ordinary care. His duty does not extend to providing reasonably safe places and appliances, but only to the exercise (456) of reasonable care to provide such, and in determining the liability of the master in the matter of their sufficiency this rule should be the guiding test." In Shearman Redfield's Negligence the doctrine is stated in this language: "The duty of the master is to use reasonable or ordinary care to secure the safety of the servant while engaged in the service, and to that end to use reasonable or ordinary care to provide and maintain safe places to work and reasonably safe machinery, tools, and appliances." Section 183a. In Hicks v. Mfg. Co., 138 N.C. 326, it is said: "An employer of labor . . . is required to provide for his employees, in the exercise of proper care, a reasonably safe place to work, and to supply them with machinery, implements, and appliances reasonably safe and suitable for the work in which they are engaged." Again, in Harmon v. Contracting Co., 158 N.C. 28: "It is a primary duty of the master to exercise ordinary care in supplying his servant with reasonably safe tools and implements, and a reasonably safe place in which to perform his work." And in Smith v. R. R.,182 N.C. 296, the principle is reiterated: "The court instructed the jury `that under the law it was the duty of the defendant to furnish to the plaintiff, while in its employment, a safe place to do his work and reasonably safe implements with which to do the work required of him.' His Honor corrected this charge afterwards by instructing the jury that he should have told them that the defendant was required to furnish only `a reasonably safe place for the servant to do his work,' but left it otherwise intact. It is not the absolute duty of the master to furnish even a reasonably safe place for the servant to do his work, but the true and correct rule is that he must use ordinary care to provide for him such a place. Choctaw O. G. R. C. v. McDade, 191 U.S. 64;Garner v. R. R., 150 U.S. 359; Washington G. R. Co. v. McDade,135 U.S. 570; B. O. R. R. v. Baugh, 149 U.S. 368. See, also,Powell v. Anderson S. T. P. Co., 256 Pa. 618, and Kryner v.Gold Mining Co., 184 F. 43." To the same effect are the following additional cases: Pigford v. R. R., 160 N.C. 98; Ammons v. Mfg. Co., *Page 490 165 N.C. 449; Steele v. Grant, 166 N.C. 641; McAtee v. Mfg. Co., ibid., 456; Ainsley v. Lumber Co., 165 N.C. 126; Tate v. Mirror Co., ibid., 278;Rogers v. Mfg. Co., 157 N.C. 485; Bradley v. R. R., 144 N.C. 557; Marks v.Cotton Mills, supra; Ensley v. Lumber Co., 165 N.C. 691. Isolated expressions may be found which, if literally construed, would make the master's duty absolute; but evidently in these cases a formal statement of the principle was not deemed necessary. Alley v. Pipe Co., 159 N.C. 330;Avery v. Lumber Co., 146 N.C. 595.
The instructions excepted to are at variance with these (457) authorities. His Honor inadvertently omitted therefrom the essential element of ordinary care and imposed upon the defendant the positive duty of providing a place and implements of a designated character. Therein is error which entitles the defendant to a new trial.
Let this be certified to the end that the matters in controversy may be submitted to another jury.
New trial.