SEAWELL, J., dissenting.
CLARKSON, J., concurs in dissent.
Civil action to recover damages for personal injury allegedly resulting from actionable negligence.
Plaintiff was injured on morning of 1 February, 1939, by an automobile operated by defendant, Mrs. Norman Elliott, while he was at work as a member of a bridge force of defendant, Atlantic Coast Line Railroad Company, composed of seven others and the foreman, J. T. Daily, engaged in repairing or reflooring the grade crossing where the Plymouth-Tarboro Branch of said defendant's railroad intersects with the State Highway from Robersonville to Bethel in the State of North Carolina.
On the trial below evidence for plaintiff discloses that his injury occurred under factual conditions and circumstances substantially these: At the point of the accident the highway crosses the railroad "on something of an angle," estimated by one witness to be forty to forty-five degrees. The highway is surfaced with concrete sixteen or eighteen feet wide to within inches of the ends of the crossties on each side of the railroad. The intervening space is so floored with boards by the defendant Railroad Company as to provide a traveling surface even with the concrete surface of the highway. The bridge force of which plaintiff was a member was engaged in the usual way in repairing the flooring at the crossing in question. The foreman and members of the force, in going to work at 7:30 o'clock on said morning, rode on a railroad motor car to which was attached a railroad dump car on which their working tools and implements were transported. Upon arriving at the crossing the dump car was lifted from the railroad track by the plaintiff and others and placed as a barricade on the concrete portion of the highway on the right side of one traveling from Robersonville toward Bethel, at a distance stated by plaintiff to be ten steps, and by another forty-five feet, from and on the Robersonville side of the railroad track so as to leave one-half or more of the paved portion of the highway on the left side open to traffic. The motor car was lifted and similarly placed on the paved portion of the highway and on the same side thereof, but next to Bethel. The men of the force were working between these barriers and *Page 395 
on the same side. A standard red flag was placed on the dump car and on the motor car, respectively, on the corner nearest the center of the highway. On the dump car there were also "a lot of tools . . . some drift bolts . . . in a bucket, saws, hammers, axe, jack and spike hammer. The jacks were standing up about three feet high; the tools were laying down, and were not piled as much as a foot high." The dump car has four wheels and is about 5 feet long, about 3 1/2 feet wide, and about 2 feet high. The floor of the motor is about same height as the dump car — and with the railing and seats it is about 3 1/2 feet high.
In approaching the crossing from Robersonville: (1) There was a "perfectly open view" and the dump car could be seen for a half mile; (2) at a point variously estimated to be from 125 to 200 feet before reaching the railroad there was a regular railroad cross-arm sign and "there was a North Carolina Stop sign about 125 or 150 feet from the track." (3) The railroad could be seen on both sides of the highway.
The witness J. H. Womble testified: ". . . I passed there the morning of the collision about 9 o'clock. There were hands at work and other signs of operation going on at the place . . . there was a hand car sitting on the side of the road . . . not square but at about a forty to forty-five degree angle. There was a flag laying on the flat car two and a half to three feet from the ground. . . . We did not stop. We passed by riding. There were regular crossing signs, the railroad arm above and the State has got railroad crossing signs. . . . I was riding in a truck. . . . Some hundred and fifty or two hundred feet before you reach the railroad is a railroad warning sign, a cross-arm standing several feet up and the boards were about four feet long, I judge, and I guess the letters were six inches high." Q. "Anybody that had any kind of eyes could see that sign? A. Yes, sir." "After you pass the cross-arm you come to another sign the Highway Commission put up. As I recall it has got `Railroad' and represents a stop at that time, . . . a regular highway sign showing that there was a railroad ahead of it. There was no vehicle ahead of me. Hanging over from the side of the dump car was a stall (staff) with a flag, standard red warning flag. I pulled slightly to my left and went around it in perfect safety. . . . I saw the dump car. . . ."
The defendant, Mrs. Norman Elliott, traveling in an automobile with her mother, sister and two children, on their way from Hertford to Rocky Mount, passed through Robersonville and up to the crossing on the side of the highway on which the dump car and motor car barricades were placed as above stated. As she approached the crossing she overtook another car traveling in the same direction and on the same side of the highway. She speeded up to pass that car and just at that moment it turned to the left to go around the barricade. It went over *Page 396 
the crossing in safety and without colliding with the barricade or injuring any of the workmen. But she kept straight on into the dump car and crossing where plaintiffs and others were at work, striking and seriously injuring plaintiff, who was facing toward Bethel, and also injuring the foreman, who was standing by, directing plaintiff in his work.
Mrs. Elliott, testifying as witness for plaintiff, states in part: "I was driving and there was another car just ahead of me and I didn't see the barricade until he pulled out to go around it and I was right on it, in fact I was just getting ready to pass the other car as he pulled out to the left. I couldn't say exactly how far I was from where plaintiff was working but it was only a short distance; I would say it wasn't much further than from here to the front bench. Before the other car pulled over in front of me he pulled out to the left and went around it and that left the road blocked on both sides. I had nowhere to go but to hit the obstruction or the other car. . . . I had just begun to pass him; I was speeding up the car to pass him as he pulled out and blocked that side and I had to keep straight ahead. He pulled out to his left and I hit the barricade. He had pulled out to go around it. The only warning of any kind that I saw was a faded-out red flag — it wasn't a brilliant new flag, and it was hanging from the end of the car down the center of the highway. . . . On both sides the land was open. . . . The reason I hadn't passed this other car before I saw the railroad sign and was staying back of him — I was going to pass him after I crossed the track. . . . There was a North Carolina Stop sign about a hundred and twenty-five or a hundred and fifty feet from the track. Q. Then after you passed the Stop sign there were railroad cross-arms? A. Yes, they were there — I don't recall that — I have seen them at a number of crossings of course. Q. You saw them at that crossing? A. I suppose I did. I knew I was approaching a railroad and that is why I was staying behind the other car. I was driving on my right-hand side of the highway and had come up behind a car some little distance and was going to pass him as soon as I crossed the railroad. I thought he slowed down and that I would go on and pass him. I didn't start pulling to the left, I started gaining speed to pass him and about time I put on speed he pulled to his left. Q. He slowed down and you put on speed? A. I suppose so. Q. When he pulled to the left he was about as far as from you to the first bench? A. I don't know as he was. I think I was a little nearer him. . . . I was coming almost to the back of his car. . . . Q. You put on speed? A. I think so. . . . I had not driven over fifty miles an hour all day. . . . It couldn't have been over fifty — I don't think at the time I was going that fast. . . . It couldn't have been over that I am sure, probably forty-five. Somewhere *Page 397 
between forty-five and fifty is my estimation. When he pulled out the sign was about as far from me as to the front bench and that is the first time I had seen it. Q. You ran into it and hit the dump car? A. I think so. . . . I do not know just how close I was following the car in front of me, it was pretty close, not over the distance of the length of the car back of him. I was staying back of him with the intention of passing him. . . . It was my intention to pass the other car ahead of me when they slowed down. I did not expect them to pull to the left. I realized I was approaching the railroad just a minute before he pulled out. I did not know that I was approaching a railroad until about a minute before he pulled out in front of me — in just a flash you might say — just as I put my foot on my accelerator to pass him he turned out."
At the close of plaintiff's evidence, the court sustained motion of defendant Railroad Company for judgment as in case of nonsuit. Thereupon plaintiff submitted to judgment of voluntary nonsuit as to defendant, Mrs. Norman Elliott, and appeals to Supreme Court and assigns error.
When considered in the light most favorable to plaintiff, we are of opinion that as to the defendant Railroad Company the evidence is insufficient to require that an issue of negligence be submitted to the jury. Harton v. Telephone Co., 146 N.C. 430, 59 S.E. 1022; Lineberry v.R. R., 187 N.C. 786, 123 S.E. 1; Thompson v. R. R., 195 N.C. 663,143 S.E. 186; Craver v. Cotton Mills, 196 N.C. 330, 145 S.E. 570; Boyd v.R. R., 200 N.C. 324, 156 S.E. 507; Hinnant v. R. R., 202 N.C. 489,163 S.E. 555; Baker v. R. R., 205 N.C. 329, 171 S.E. 342; Newell v.Darnell, 209 N.C. 254, 183 S.E. 374; Smith v. Sink, 211 N.C. 725,192 S.E. 108; Powers v. Sternberg, 213 N.C. 41, 195 S.E. 88; Butner v.Spease, 217 N.C. 82, 6 S.E.2d 808.
In an action for the recovery of damages for injuries allegedly resulting from actionable negligence, "The plaintiff must show: First that there has been a failure to exercise proper care in the performance of some legal duty which the defendant owed the plaintiff, under the circumstances in which they were placed; and, second, that such negligent breach of duty was the proximate cause of the injury — a cause that produced the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such result was probable under all the facts as they existed." Whitt v.Rand, 187 N.C. 805, 123 S.E. 84; Evans v. *Page 398 Construction Co., 194 N.C. 31, 138 S.E. 411; Hurt v. Power Co.,194 N.C. 696, 140 S.E. 730; Thompson v. R. R., 195 N.C. 663, 143 S.E. 186;Templeton v. Kelley, 215 N.C. 577, 2 S.E.2d 696; Gold v. Kiker,216 N.C. 511, 5 S.E.2d 548.
The principle prevails in this State that what is negligence is a question of law, and, when the facts are admitted or established, the court must say whether it does or does not exist. "This rule extends and applies not only to the question of the negligent breach of duty, but also to the feature of proximate cause." Hicks v. Mfg. Co., 138 N.C. 319,50 S.E. 703; Russell v. R. R., 118 N.C. 1098, 24 S.E. 512; Lineberryv. R. R., supra; Clinard v. Electric Co., 192 N.C. 736, 136 S.E. 1.
In Lineberry v. R. R., supra, Clarkson, J., said: "It is well settled that where the facts are all admitted, and only one inference may be drawn from them, the court will declare whether an act was the proximate cause of the injury or not." Again in Russell v. R. R., supra, it is stated that "Where the facts are undisputed and but a single inference can be drawn from them, it is the exclusive duty of the court to determine whether an injury has been caused by the negligence of one or the concurrent negligence of both of the parties."
Furthermore, it is proper in negligence cases to sustain a demurrer to the evidence and enter judgment as of nonsuit, "1. When all the evidence, taken in the light most favorable for the plaintiff, fails to show any actionable negligence on the part of the defendant . . . 2. When it clearly appears from the evidence that the injury complained of was independently and proximately produced by the wrongful act, neglect, or default of an outside agency or responsible third person . . ." Smith v. Sink, supra, and cases cited. See, also, Boyd v. R. R., supra; Powers v. Sternberg, supra;
and Butner v. Spease, supra.
"Foreseeability is the test of whether the intervening act is such a new, independent and efficient cause as to insulate the original negligent act. That is to say, if the original wrongdoer could reasonably foresee the intervening act and resultant injury, then the sequence of events is not broken by a new and independent cause, and in such event the original wrongdoer remains liable." Brogden, J., in Hinnant v. R. R., supra; Hartonv. Telephone Co., supra; Herman v. R. R., 197 N.C. 718, 150 S.E. 361;Beach v. Patton, 208 N.C. 134, 179 S.E. 446.
In the case in hand the relationship between defendant Railroad Company and the plaintiff is that of master and servant, or employer and employee.
What, then, is the standard of duty owed by the defendant Railroad Company to the plaintiff under the circumstances existing at the time and place of plaintiff's injury? While the books are full of writing on the subject, the accepted and well settled rule is that the master owes to *Page 399 
the servant the duty to exercise ordinary care to provide a reasonably safe place in which to do his work and reasonably safe machinery, implements and appliances with which to work. The master is not an insurer, however. Nor is it the absolute duty of the master to provide a reasonably safe place for the servant to work, or to furnish reasonably safe machinery, implements and appliances with which to work. He meets the requirements of the law, in the discharge of his duty, if he exercises or uses ordinary care to provide for the servant such a place, or to furnish such machinery, implements and appliances, that is, that degree of care which a man of ordinary prudence would exercise or use under like circumstances, having regard to his own safety, if he were providing for himself a place to work, or if he were furnishing for himself machinery, implements and appliances with which to work. This rule of conduct of "the ordinarily prudent man" measures accurately the duty of the master and fixes the limit of his responsibility to his servant. Marks v. Cotton Mills, 135 N.C. 287,47 S.E. 432; Nail v. Brown, 150 N.C. 533, 64 S.E. 434; Rogers v. Mfg. Co.,157 N.C. 484, 73 S.E. 227; Ainsley v. Lumber Co., 165 N.C. 122,81 S.E. 4; Smith v. R. R., 182 N.C. 290, 109 S.E. 22; Gaither v. Clement,183 N.C. 450, 111 S.E. 782; Tritt v. Lumber Co., 183 N.C. 830,111 S.E. 872; Owen v. Lumber Co., 185 N.C. 612, 117 S.E. 705; Murphy v.Lumber Co., 186 N.C. 746, 120 S.E. 342; Shaw v. Handle Co., 188 N.C. 222,124 S.E. 325; Michaux v. Lassiter, 188 N.C. 132, 123 S.E. 310;Cable v. Lumber Co., 189 N.C. 840, 127 S.E. 927; Riggs v. Mfg. Co.,190 N.C. 256, 129 S.E. 595; Lindsey v. Lumber Co., 190 N.C. 844,130 S.E. 713; Hall v. Rhinehart, 191 N.C. 685, 132 S.E. 787; Craver v.Cotton Mills, supra, and numerous other cases.
In Murphy v. Lumber Co., supra, it is said: "It is not the absolute duty of the master to provide for his servant a reasonably safe place to work and to furnish him reasonably safe appliances with which to execute the work assigned — such would practically render the master an insurer in every hazardous employment, but it is his duty to do these things in the exercise of ordinary care. Owen v. Lumber Co., supra. This limitation on the master's duty is not a mere play on words, nor a distinction without a difference, but it constitutes a substantial fact, or circumstance, affecting the rights of the parties. Tritt v. Lumber Co., supra." See, also, Cable v. Lumber Co., supra; Lindsey v. Lumber Co., supra.
In Riggs v. Mfg. Co., supra, Clarkson, J., said: "It will be noted that it is the duty of the master to `use or exercise reasonable care' or `use or exercise ordinary care' to provide the servant a reasonably safe and suitable place in which to do his work. The master is not an insurer." See, also, Hall v. Rhinehart, supra. *Page 400 
In Gaither v. Clement, supra, Adams, J., speaking of the character and extent of the master's duty, quotes from Bailey's Law of Personal Injuries (2 ed.), sec. 162, as follows: "The underlying doctrine of the master's duty towards his servant, with respect to the character of the appliances furnished and place of work, as well as other duties that rest upon him, is that of the exercise of ordinary care. His duty does not extend to providing reasonably safe places and appliances, but only to the exercise of reasonable care to provide such, and in determining the liability of the master in the matter of their sufficiency, this rule should be the guiding test."
Under these principles, it was the duty of the defendant Railroad Company, in the present case, to exercise ordinary care to provide for plaintiff a reasonably safe place in which to work, that is, that degree of care which a man of ordinary prudence would exercise under like circumstances, having regard for his own safety, if he were providing for himself a place to work. A breach of such duty would be negligence. The plaintiff charges such breach of duty.
But if it be conceded that there is evidence of negligence on the part of the Railroad Company, we are of opinion and hold that such negligence is insulated by the negligence of the defendant, Mrs. Norman Elliott. In ascertaining the circumstances under which the parties in the present action were placed, it is pertinent to consider what duty, if any, the defendant, Mrs. Elliott, owed to the plaintiff. At the outset let it be noted that it is not contended that the defendant Railroad Company required the plaintiff to work at a place in which it had no right to assign him work. It appears to be taken for granted that the Railroad Company was obligated to keep the flooring of the grade crossing in question in repair so as to provide smooth passage over the railroad track for those traveling upon the highway — and that the plaintiff was lawfully upon the highway and in the performance of his duty as a member of the crew of workmen assigned to do such work.
It is a general rule of law, even in the absence of statutory requirements, that the operator of a motor vehicle must exercise ordinary care, that is, that degree of care which an ordinarily prudent person would exercise under similar circumstances. In the exercise of such duty it is incumbent upon the operator of a motor vehicle to keep same under control, and to keep a reasonably careful lookout, so as to avoid collision with persons and vehicles upon the highway. 5 Am. Jur. Automobiles, sections 165, 166, 167.
In this connection it is appropriate to note, among others, certain limitations the Legislature has placed upon the privilege accorded operators of motor vehicles of overtaking and passing as well as following vehicles proceeding in the same direction. The statute, *Page 401 
Public Laws 1937, chapter 407, provides in section 112, subsection "c," that "the driver of a motor vehicle shall not overtake and pass any other vehicle proceeding in the same direction at any steam or electric railway grade crossing nor at any intersection of highway unless permitted to do so by a traffic or police officer"; and in section 114, subsection "a," that "the driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, with regard for the safety of others and due regard to the speed of such vehicles and the traffic upon and condition of the highway." A violation of either of these statutes would be negligence per se, and, if injury proximately results therefrom, it would be actionable. Williams v. Woodward, ante, 305.
Applying these principles to instant case, it was the duty of defendant, Mrs. Elliott, to exercise ordinary care in the operation of her automobile, having same under control and keeping a reasonably careful lookout, and to observe the law of the road so as to avoid collision with plaintiff in lawful pursuit of work upon the highway.
A laborer whose duties require him to be on the highway may assume that operators of motor vehicles will use reasonable care and caution commensurate with visible conditions, and that they will approach with their cars under reasonable control, and that they will observe and obey the rules of the road.
"One is not under a duty of anticipating negligence on the part of others, but in the absence of anything which gives or should give notice to the contrary, a person is entitled to assume, and to act on the assumption, that others will exercise ordinary care for their own safety." 45 C. J., 705; Shirley v. Ayers, 201 N.C. 51, 158 S.E. 840. See, also, Cory v.Cory, 205 N.C. 205, 170 S.E. 629; Jones v. Bagwell, 207 N.C. 378,177 S.E. 170; Hancock v. Wilson, 211 N.C. 129, 189 S.E. 631; Sebastian v.Motor Lines, 213 N.C. 770, 197 S.E. 539; Guthrie v. Gocking, 214 N.C. 513,199 S.E. 707. The principle has been applied in the courts of other states.
In Nehring v. Chas. M. Monroe Stationary Co. (1917), Mo. App.,191 S.W. 1054, where a street sweeper was struck by an automobile, the Court held that he was lawfully upon the roadway and in the performance of his duty, in plain view, and the driver of any vehicle was bound to take notice of him, and to exercise the care enjoined by law upon drivers of such vehicles not to injure him; and that he could rightly assume that this would be done.
In Papic v. Freund (1916), Mo. App., 181 S.W. 1161, where a truck ran over plaintiff's leg while he was repairing the floor of a subway entrance to a terminal station, a board having been placed across the side of the entrance to the subway, thus blocking entrance to the side on which he was working, the Court considered the case similar to those *Page 402 
involving, and that it should be disposed of in accordance with, the principle which attends the use of a public street, and said: "In such circumstances, the law devolves the duty upon the defendant's driver to anticipate the presence of persons engaged as plaintiff was, as within the range of reasonable probability, and to exercise due care in making observations to the end of rendering them reasonably secure from injury by being run upon." And further, speaking of plaintiff, the Court there said: "It is certain that the law does not require one so situated to anticipate negligence on the part of others."
In Ferguson v. Reynolds (1918), 52 Utah 583, 176 P. 267, where a street sweeper was struck by an automobile, the Court, in upholding an instruction, said, "The instruction, in effect, merely informed the jury that the plaintiff had a right to assume that the driver of the automobile would exercise ordinary care in driving the car. This is certainly the law everywhere. No one using a public street, or being lawfully thereon, is required to assume otherwise than that all persons using the same will exercise ordinary care in doing so and will not expose anyone on the street to unnecessary danger."
In the present case, in accordance with the general rule, the plaintiff had the right to assume, and to act upon the assumption, that the defendant, Mrs. Elliott, and others traveling upon the highway in question, would, in the operation of their motor vehicles, exercise ordinary care, that care which an ordinarily prudent person would exercise under like circumstances, and that they would observe the statutory rules of the road.
Such was the situation of plaintiff with respect to those traveling upon the highway.
Now, then, it may be appropriately stated here that the defendant Railroad Company, while it was engaged in working on the crossing in the highway, also owed to its codefendant, Mrs. Elliott, and others traveling upon the highway, the duty to exercise ordinary care in providing and maintaining reasonable warnings and safeguards against conditions existent at the time and place in question. Gold v. Kiker, supra. Likewise, in performing its duty to the plaintiff to exercise reasonable care to provide for him a reasonably safe place in which to work, the defendant Railroad Company owed the duty to plaintiff to exercise ordinary care in providing and maintaining reasonable warning to travelers upon the highway of the presence of plaintiff at work on the crossing in the highway. In the performance of this duty and bearing upon the care to be exercised by it, the defendant Railroad Company, in accordance with the general rule, had the right to assume that its codefendant, Mrs. Elliott, and others using the highway, would exercise *Page 403 
ordinary care and observe the law of the road in the operation of their automobiles.
Applying these principles to the facts in the case in hand, did the Railroad Company exercise ordinary care, under the existing circumstances, in providing reasonable warnings of the fact that its servants were working in the highway? We think so. The highway was straight for half a mile. The railroad could be seen on both sides of the highway. There were both railroad crossing and highway stop signs to indicate the presence of the railroad crossing. In addition, the defendant Railroad Company barricaded the side of the highway with a railroad dump car on one side of the crossing and a railroad motor car on the other — on each of which a standard sized red flag was displayed. The dump car could be seen for a half mile by one approaching from Robersonville. It was in broad daylight.
In this situation, the rule of the ordinarily prudent man does not require Railroad Company, in the performance of its duty to exercise ordinary care to provide plaintiff a reasonably safe place in which to work, to anticipate that the driver of an oncoming car will not see that which is plainly before her — or drive with her car so out of control that she cannot stop when she does see the barricade, or person, in the line of her travel, when, ordinarily, she would have plenty of time and space within which to avoid the injury. Nor was it required in exercise of such care to anticipate that she would violate the provisions of the statute with regard to overtaking and passing and following motor vehicles traveling in the same direction. Public Laws 1937, chapter 407, sections 112 (c) and 114 (a).
The case of Boyd v. R. R., supra, enunciates and applies to a similar factual situation the principles of law involved in the case in hand, with respect to question of negligence as well as of proximate cause. There the intestate was employed by defendant as watchman or flagman at a street crossing. On the night in question, upon noting the approach of a freight train, he went upon the crossing with a red lantern, a regular flagman's lantern, and began "flagging the crossing." The operator of one automobile saw the intestate and as he began to stop his car, another car passed him, driving rapidly, and without stopping or attempting to stop, moved on to the crossing at a rapid rate of speed and struck the watchman and knocked him under the train which was then passing over the crossing. Brogden, J., speaking for the Court in sustaining judgment of nonsuit, said: "The only theory upon which the plaintiff seeks to recover is that the lantern furnished by defendant to the flagman was not a proper instrumentality in that it was an oil lantern and did not throw out sufficient light. This theory, however, is not supported by the evidence. The only eye-witness to the killing saw the light and *Page 404 
stopped. The red lantern is a sign of danger. Its size and source of illumination are not material if, in fact, the instrumentality actually gave reasonable warning of danger. The function performed by the appliance is more important upon the facts and circumstances of this case than mere mechanical construction. Moreover, it is manifest that the unfortunate death of plaintiff's intestate was proximately caused and produced by the negligence and reckless act of a third party, and that such reckless and negligent act was in no wise related to, growing out of, or dependent upon any omission of duty upon the part of defendant. Even if there was evidence of negligence upon the part of defendant, the applicable principle of liability is stated in Craver v. Cotton Mills, supra, in these words: `While there may be more than one proximate cause, that which is new and entirely independent breaks the sequence of events and insulates the original primary negligence. This principle would apply if it should be granted that the defendant was negligent with respect to the light in the tower.' Indeed, the ruling of the trial judge was in strict accordance with the principles of law announced in Lineberry v. R. R., supra; Thompson v.R. R., supra."
It is pertinent to compare that case with the one in hand. The principle of law is the same. While in the Boyd case, supra, the breach of duty charged against the defendant Railroad Company, the master, was the failure to exercise ordinary care to furnish to the plaintiff's intestate, the servant, a reasonably safe lantern with which to work, here the alleged breach of duty against the defendant Railroad Company, the master, is the failure to exercise ordinary care to provide for the servant a reasonably safe place in which to work, in that it failed to provide sufficient warning to travelers upon the highway that plaintiff was working on the crossing in the highway. The factual situations are strikingly similar. Here the warning sign placed upon the dump car is a red flag of standard size. It was in fact seen and observed and the warning heeded by others traveling the highway just as in the Boyd case, supra. It is not contended that the red flag and the dump car could not be seen. While Mrs. Elliott described the flag as "a faded out red flag" not "a brilliant new flag," it was nevertheless red, according to all the testimony. In truth, she says that she saw it and that "it was hanging from the end of the car down the center of the highway." The witness Womble saw the dump car, with the red flag on it, heeded the warning and passed by in safety and without injury to the plaintiff and others working on the crossing in the highway. The driver of the car which was being overtaken by defendant, Mrs. Elliott, saw the warning, slowed down, turned to the left and passed in safety and without injuring anyone. On the other hand, as stated in brief of counsel for plaintiff, "She (Mrs. Elliott) dashed by in her car with perhaps a reckless *Page 405 
degree of negligence and ran over the plaintiff from behind him." But it is contended that Mrs. Elliott was prevented by the car ahead from seeing the dump car and red flag and that she did not see it until the car ahead turned to the left, when it was too late for her to stop in time to have averted the accident. However, Mrs. Elliott, testifying for plaintiff, frankly admits that she saw the railroad crossing sign and the State Highway stop sign, and that she knew she was approaching the crossing, and that she was traveling at a speed of forty-five to fifty miles per hour. While she stated that she intended to pass the car ahead after she had crossed the railroad track, she said, "I thought he slowed down and that I would go on and pass him. . . . I started gaining speed to pass him and about time I put on speed he pulled to the left." In this situation, she said, "I had nowhere to go but to hit the obstruction or the other car." However, evidence points unerringly to the conclusion that this situation was created by her failure to exercise ordinary care and to observe the law of the road in the operation of her automobile, and that the injury to plaintiff was proximately caused thereby, independent of any act of omission of duty upon the part of the defendant Railroad Company. Boyd v.R. R., supra. See, also, Powers v. Sternberg, supra, and Butner v. Spease,supra, where the subject of intervening negligence has been recently treated and applied.
The evidence discloses no reasonable ground for the foreman of defendant, present at the crossing, to anticipate that defendant, Mrs. Elliott, would not bring her car under control before colliding with the barrier placed as warning, until too late to warn plaintiff of the impending danger.
It is argued in favor of plaintiff's position that two permissible inferences of negligence are deducible from the evidence, first, that the notice to travelers on the highway was inadequate, and, second, that the use of the dump car as a barrier created "a dangerous obstruction in the line of travel." Neither view is predicated on the rule of ordinary care as the correct standard of conduct. The one suggests less, the other more, than ordinary prevision or foresight in providing the plaintiff a reasonably safe place to work. They both miss the mark. The rights of travelers on the highway are not involved in the case. We hold that on the record as presented, the plaintiff has failed to make out a case of actionable negligence against the defendant.
The pertinent authorities sustain the judgment below.
Affirmed.