G. L. TEMPLETON v. CLAUDE KELLEY, CHARLES ALEXANDER, BEATY SERVICE COMPANY, A CORPORATION, AND L. L. LEDBETTER, TREASURER OF THE CITY OF CHARLOTTE.

(Filed 10 May, 1939.)

**1. Negligence § 1—Actionable negligence is failure to exercise due care under the circumstances, which proximately causes injury.**

In order to establish actionable negligence, plaintiff must show failure of defendant to exercise proper care in the performance of some legal duty which he owed plaintiff under the circumstances in which they were placed, and that such negligent breach of duty proximately caused the injury and was one from which any man of ordinary prudence could have foreseen that such result was probable under all the facts as they existed. Chapter 407, Public Laws of 1937, sec. 103 (b), (e).

**2. Automobiles § 12d—**

Speed in excess of 20 miles per hour in a business district is *prima facie* evidence that the speed is excessive and unlawful, but such evidence is not *prima facie* proof of proximate cause, but is merely evidence to be considered with other evidence in determining actionable negligence.

**3. Automobiles § 12a—**

The fact that speed is within limits prescribed by statute does not relieve the motorist of the duty to exercise due care to avoid colliding with any pedestrian and to give warning by sounding the horn when necessary. Chapter 407, Public Laws of 1937, sec. 135 (c), (e).

**4. Automobiles § 18g—**

Evidence that the driver of a taxicab whipped around a car in front of him in a business district at a speed of 25 to 30 miles per hour and struck a pedestrian standing in the middle of the street, *is held* sufficient to be submitted to the jury upon the issue of negligence.

**5. Negligence § 11—**

There is no essential difference between negligence and contributory negligence, contributory negligence being merely negligence on the part of the plaintiff, and the same standard applies to both.

**6. Automobiles § 7—**

The failure of a pedestrian to observe the statutory provisions in crossing a street at an intersection at which traffic control lights are operated is not negligence *per se*, but is evidence to be considered with other evidence in the case in determining whether the pedestrian exercised due care for his own safety. Chapter 407, Public Laws of 1937, sec. 135 (c).

**7. Automobiles § 18c—**

Evidence that a pedestrian failed to observe statutory requirements in crossing a street at an intersection at which traffic control lights were maintained *held* not to establish contributory negligence as a matter of law.

APPEAL by plaintiff from *Olive, Special Judge,* at 6 February, 1939, Extra Term of MECKLENBURG.

Civil action for recovery of damages for alleged personal injury.

Plaintiff alleges that injuries sustained by him on 24 May, 1938, on West Trade Street in the city of Charlotte, N. C., resulted approximately from the negligence of the defendants in that they operated or caused to be operated their taxicab—(a) "In a careless and reckless manner, at an excessive rate of speed, . . . without due caution and circumspection, and without a proper lookout for pedestrians and others crossing West Trade Street," and (b) "in a way and manner so as to endanger or be likely to endanger this plaintiff and others who had occasion to cross said thoroughfare"; and (c) in that "defendants failed to exercise ordinary care in the operation of their said taxicab, but, on the contrary, drove the same or caused same to be driven at an excessive rate of speed in an improper and careless manner in view of the circumstances, traffic and other conditions prevailing upon said thoroughfare."

Defendants deny the material allegations in the complaint and plead contributory negligence of plaintiff as bar to his right to recover in this action.

Plaintiff offered evidence, briefly stated, tending to show: That he was struck by a taxi traveling west and operated by the defendant Claude Kelley, at a point on West Trade Street in a business district in the block between intersections of that street with Pine-Mint Street on the east and Graham Street on the west; that there are traffic lights at each of those intersections; that at that point West Trade Street is about 40 to 45 feet wide, and is a link in State Highways Nos. 27 and 74; that about 10 o'clock p.m., he got out of his automobile, parked in front of the post office on the south side of West Trade Street, about midway between the intersections of that street with Pine-Mint Street and Graham Street about 150 feet from each intersection, and started diagonally across West Trade Street to the bus station, which is on the north of said street; that there are two street car tracks approximately in the center of the street; and that two automobiles were traveling west on Trade Street. Plaintiff testified: "When I reached the third rail, one of those cars was practically in front of me and I stopped to let it by, but when I did, . . . this taxi . . . behind the car . . . whipped around to the left of the car in front, and hit me. . . . I was still standing in the street . . . waiting on the car to pass. . . . I did say that the car was traveling 25 to 30 miles per hour when it struck me. . . . There were plenty of lights there, street lights, and there were lights from the bus station. . . . I saw no other cars . . . going west on Trade Street. When I first saw them they were about 15 to 20 feet from me, the front car." On cross-examination plaintiff further testified, in part: "I got out of the left-hand door of my car. I stood there just a second or two. . . . I was not paying any attention to the signal light at the intersection at

TEMPLETON *v.* KELLEY.

the time and don't know whether it was red or green. . . . Before I started across I didn't notice either of those signal lights (referring to those at Pine-Mint Street and at Graham Street intersections). . . . I saw Kelley's car just a few seconds before it hit me, a few feet from me, but I couldn't move. Kelley's car was a good way behind the other car. . . . I was watching the front car, and I was watching back that way too, to the right. The front car was going slow, and I would say something like 15 miles per hour. Both cars were on this side of the lights when I saw them, on this side of Pine Street. I expect the light at the intersection changed a couple of times before I got across the street. . . . I did not go in front of the first car. . . . I did not run in front of the front car. . . . He (Kelley) was about 20 feet from me when I first noticed him, and I didn't have time to move."

E. C. Selvey, city traffic policeman, testified: "I was standing at the corner of Pine and West Trade Streets. I heard the noise. I ran down to the place where the accident took place. . . . When I got there Mr. Templeton was lying in the street to the right of the center of the line, right at the car tracks, . . . about 25 feet in front of the taxicab."

C. P. Yandle testified: "I saw the accident. . . . I was coming east on West Trade Street. . . . When the taxi came around the other car, Mr. Templeton was just about the middle of the car tracks, but he came in ahead there, and you couldn't judge just what happened to the second. . . . He was standing looking this way, that is, east. My opinion is that the rate of speed of the taxi when the collision occurred was 25 or 30 miles per hour. The taxi went probably 10 or 12 feet after it struck him. . . . I saw two cars going west, the first was going around 15, or maybe 20 miles per hour, just rolling down the street. . . . Mr. Templeton's body went about 20 feet after the accident, I imagine."

Plaintiff introduced in evidence the adverse examination of defendant Claude Kelley, in which he testified in part: "My car was going west on West Trade Street at 10 o'clock p.m., and the accident occurred in front of the bus station. . . . I stopped at the red light at the corner of Mint Street and Trade Street. . . . I started off in low gear and changed to second gear, and there were other cars passing me that were going down Trade Street. Mr. Templeton ran in front of a car passing me and ran right into the left headlight and fender of my car, the left headlight struck him. I was still in second gear. I was going approximately 20 miles per hour. . . . I saw Mr. Templeton just a second before he and my car came in contact. After the collision . . . he was right on the street and had been knocked approximately 15 feet west, but *kinda* on a 45 degree angle to my left . . ." On

cross-examination he further testified, in part: "I was on the right-hand side of the street. . . . After Mr. Templeton ran . . . into my car, I went approximately 10 feet before I stopped. . . . The brakes on my car were in good condition. . . . I cut to the left to try to dodge Mr. Templeton, but did not have opportunity to dodge him from the time he ran into my car."

At close of plaintiff's evidence, upon demurrer thereto by defendants, the court entered judgment as in case of nonsuit.

Plaintiff appeals to the Supreme Court and assigns error.

*Uhlman S. Alexander for plaintiff, appellant.*
*H. L. Taylor for defendants, appellees.*

WINBORNE, J. Two questions arise for determination of this appeal:

1. When taken in the light most favorable to plaintiff, is there sufficient evidence of negligence on the part of defendants to require the submission to the jury of an issue with respect thereto?

2. Upon all the evidence, is the plaintiff guilty of contributory negligence as a matter of law?

The first is answered in the affirmative, and the second in the negative.

1. In order to establish actionable negligence, "the plaintiff must show: First, that there has been a failure to exercise proper care in the performance of some legal duty which the defendant owed the plaintiff, under the circumstances in which they were placed; and, second, that such negligent breach of duty was the proximate cause of the injury—a cause that produced the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such result was probable under all the facts as they existed." *Whitt v. Rand,* 187 N. C., 805, 123 S. E., 84; *Ramsbottom v. R. R.,* 138 N. C., 39, 50 S. E., 448.

In connection with the application of this rule to the present case, it is appropriate to refer only to those pertinent sections of the Motor Vehicle Act, chapter 407, Public Laws 1937. Sec. 103 provides in part: "(a) No person shall drive a vehicle on a highway at a rate of speed greater than is reasonable and prudent under the conditions then existing.

"(b) Where no special hazard exists the following speeds shall be lawful, but any speed in excess of said limits shall be *prima facie* evidence that the speed is not reasonable or prudent and that it is unlawful: (1) Twenty miles per hour in any business district; . . .

"(e) The foregoing provision of this section shall not be construed to relieve the plaintiff in any civil action from the burden of proving negligence upon the part of the defendant as the proximate cause of an accident."

In the present case there is evidence that the occurrence. took place in a business district in the city of Charlotte, and at a time when the taxicab in question was being operated at a speed of twenty-five to thirty miles per hour.   That speed, being in excess of twenty miles per hour— the limit prescribed for business districts, is *"prima facie* evidence that the speed is not reasonable or prudent and that it is unlawful."   But, as was said by *Barnhill, J.,* in *Woods v. Freeman,* 213 N. C., 314, 195 S. E., 812, "It is not *prima facie* proof of proximate cause."   It is only evidence of negligence to be considered with other facts in the case in determining whether the defendants are guilty of actionable negligence.   *Sebastian v. Motor Lines,* 213 N. C., 770, 197 S. E., 539.

In subsection "c" of section 135 of said chapter 407, Public Laws 1937, with respect to "pedestrian's rights and duties" it is further provided that: "Between adjacent intersections at which traffic control signals are in operation pedestrians shall not cross at any place except in a marked cross walk."   In subsection "e" of said section, however, it is provided that: "Notwithstanding the provisions of this section, every driver of vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway, and shall give warning by sounding the horn when necessary, and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway."

Applying these principles to the evidence in the case in hand, when taken in the light most favorable to plaintiff, we are of opinion that there is sufficient evidence for submission to the jury of an issue of negligence under appropriate instruction.   *Woods v. Freeman, supra.*

2. "The burden of showing contributory negligence is on the defendant, and motion for nonsuit may never be allowed on such an issue where the controlling and pertinent facts are in dispute, nor where opposing inferences are permissible from plaintiff's proof," *Hoke, J.,* in *Battle v. Cleave,* 179 N. C., 112, 101 S. E., 555; *Ferguson v. Asheville,* 213 N. C., 569, 197 S. E., 146.

In reality, there is no essential difference between negligence in the plaintiff and negligence in the defendant.   *Liske v. Walton,* 198 N. C., 741, 153 S. E., 318.   See also *Sebastian v. Motor Lines, supra.   Stacy, C. J.,* there said: "The criterion for establishing both are the same. . . .   The same standard applies alike to both."

In this connection it is again appropriate to refer to section 135 of chapter 407, Public Laws 1937, relating to "pedestrian's rights and duties."   If the plaintiff, as pedestrian, violated the provisions of the statute relating to crossing between adjacent intersections at which traffic control lights are operated, this would be evidence of negligence, *Sebastian v. Motor Lines, supra; Marsh v. Byrd,* 214 N. C., 669, 200 S. E.,

389; *Stephens v. Johnson, ante,* 133, 1 S. E. 2d., 367, to be considered with other evidence in the case in determining whether the plaintiff is actually guilty of negligence which proximately caused or contributed to his injury.

Upon the evidence in this record, we are of opinion that the question is for the jury. With respect to the duty of plaintiff as well as the duty of defendant to keep a proper lookout, see *Quinn v. R. R.,* 213 N. C., 48, 195 S. E., 85.

The judgment below is

Reversed.