BARNHILL, J., concurs in part and dissents in part.
Civil action for recovery of damages for alleged wrongful death. C. S., 160.
On the night of 19 May, 1938, plaintiff's intestate, Coy Auston, while traveling asleep in the cab of a truck operated by one I. D. Walker, en route from Philadelphia to Florida, was killed when the truck collided with west abutment wall of a bridge over a prong of Swift Creek approximately two miles south of Whitakers, North Carolina, and two miles north of Battleboro, on State Highway Project No. 1647, and burned.
Plaintiffs allege that the death of intestate was proximately caused by the joint and concurrent negligence of the defendants in failing in their duty to provide adequate warning signals along the said highway and at the bridge to indicate to the traveling public the dangerous condition created there by widening of the old paved portion of the highway.
Plaintiff further alleges and offered evidence tending to show:
1. That at that time defendant, Ames Webb, Inc., under contract with State Highway and Public Works Commission of North Carolina, dated 3 December, 1937, for widening the highway between said points adjacent to said bridge, had widened same by laying a strip of concrete paving four feet wide along the west side of and adjoining the old concrete road, from Whitakers to a point 20 feet north of said bridge; thus leaving the west abutment of the bridge four feet east of the western margin of the added strip, and that said defendant "was waiting on the defendants, Kiker 
Yount, to complete the bridge project" before *Page 513 
returning to fill in the space between the end of above strip and the bridge.
2. That defendants, Kiker Yount, entered into contract with State Highway and Public Works Commission of North Carolina, dated 28 January, 1938, for the construction of all bridge structures on said State Highway Project No. 1647 between said points, including the bridge at which plaintiff's intestate met his death, and entered upon the performance of said contract about 14 February, 1938; that, under the terms of their contract, and during the construction of said bridge, these defendants were required to build a detour bridge for the accommodation of traffic over said road; and that prior to 19 May, 1938, they had caused piling to be driven adjacent to and west of the bridge in question for the purpose of constructing thereon a temporary detour bridge. Plaintiff offered in evidence part of answer of these defendants admitting these facts, but averring that they "had not touched the bridge or in any way interfered therewith or done anything either to the bridge or highway to make the same more hazardous than it had been since its construction many years prior thereto."
3. That on 19 May, 1938, no part of the work covered by the contracts of Ames Webb, Inc., and of Kiker Yount with State Highway and Public Works Commission had been accepted by said Commission.
4. That these contracts provide that the construction work included therein is to be done in accordance with the specifications contained in the published pamphlet entitled "State of North Carolina, State Highway and Public Works Commission specifications April 1, 1935," and supplements thereto, which are by reference incorporated in and made a part of the contracts.
5. That said specifications provide, inter alia, that: (a) "Where used therein the word `contractor' shall mean any individual, firm or corporation with whom a contract is made by the State Highway and Public Works Commission." Paragraphs 5.4 of section 5, page 15. (b) "Where the road to be constructed under the specifications follows the general route of an existing road which is wholly or in part used by the traveling public the contractor shall at his own expense repair and maintain in safe, passable and convenient condition such part or parts of such existing roads as are being so used between extreme limits of the work under this contract during the entire time from the award of this contract until the final acceptance of the work hereunder and all such existing road end parts thereof and construction thereon shall be under the jurisdiction of the contractor and he shall be liable therefor." Paragraph 4.5, section 4, page 12.
(c) "The contractor shall provide, erect, maintain and illuminate where necessary all barricades placed at the beginning or end of the *Page 514 
construction project and any barricades that are needed in case through detour intersects or crosses construction work. . . . The contractor shall erect and be responsible for all local detour signs and all barricades." Paragraph 7.7 of section 7, page 22.
6. That in the contract of Ames Webb, Inc., it is provided: "Maintenance of Traffic: The roadway contractor will be required to take care of all local and through traffic within the limits of this project during construction by using the present road where possible and constructing and maintaining a suitable detour and crossings where necessary, all of which shall be done at his own expense. He shall place and maintain such signs, danger lights and watchmen as in the opinion of the engineer may be necessary."
Defendants, respectively deny the allegations of duty to warn, of breach of duty and several alleged acts of negligence, and aver that proper warning signs, flares and lights were displayed and that the death of intestate was "proximately caused by the sole negligence of the driver of the truck in failing to keep a proper lookout."
Defendants, Kiker Yount, aver that at the time of the accident in question the actual repair of the bridge itself had not begun, and say that, while they had driven some piling in Swift Creek on the west side and near to the bridge, they were not charged with any duty to warn the public of any danger on the said bridge before they had begun to dismantle it or in some way to increase the hazard of travel over it.
Defendants, Ames Webb, Inc., aver that on 19 May, 1938, they had completed the construction of the strip of paving to a point 20 feet on each side of and in front of the bridge, and, as required by their contract with the State Highway and Public Works Commission, were deferring the paving of that space until the bridge project had been completed by Kiker 
Yount; that some time prior thereto Kiker Yount had hauled material to the bridge project and had driven piling in the stream on the west side of the bridge for the purpose of building a temporary bridge to be used by the traveling public while the original bridge was being widened, and "were in full charge of said project, including the bridge and highway adjacent thereto, and were charged with the duty of maintaining same in a reasonably safe condition, including the display of all necessary warning signs, and that Ames Webb, Inc., was not then charged with any duty whatever in connection with safeguarding the project."
Plaintiff further offered evidence tending to show substantially these facts: That the highway south of Whitakers was then open to and used by public traffic; that in traveling from Whitakers and approaching the bridge the truck, empty at the time, was being operated on the right-hand side of the road with right wheels on the strip of new paving; that the driver was not familiar with that part of the road; that he did not *Page 515 
see any signs at Whitakers or along the road to indicate that any construction work was going on; that there were no lights along the road to indicate such work; that there was no light on the bridge; that there was not any sign or barricade to indicate that the bridge was narrower than the pavement and extended into the highway; that there was nothing to warn that the four-foot strip of pavement ended within approximately 20 feet of the bridge; that the truck was properly equipped with lights; that the driver was awake and alert just before the accident, and was driving at such a speed and had the truck under such control that he could have stopped it and avoided colliding with the bridge if there had been a light on the bridge; that the truck was traveling 35 to 40 miles per hour; that it came to rest at the south end of bridge, which was 60 feet long; that the driver on cross-examination being asked this question — "You tell the jury, running 35 to 40 miles an hour you could not see as big a thing as a bridge in front of you?" replied: "Not when it is white, standing up there like the road, you can't."
There was evidence that the right abutment of the bridge was four and a half to five feet high and two feet wide; that the driver did not see the bridge until too close to avert the collision, and that though there was no light on the bridge another truck driver saw it that night and did not hit it.
Evidence for plaintiff further tended to show that the driver of the truck, while being taken to the hospital immediately after the accident, while in the hospital and afterward, had stated to different persons that the left front tire blew out, causing the truck to run into the bridge abutment on the right. The driver testified that he did not remember making such statements. In this connection there is evidence tending to show that the driver was severely burned, suffered intensely, and was under influence of opiates for several weeks, and, was not responsible for such statements, if made; and there was also evidence that he appeared to know and understand what he was saying.
While there is evidence that the driver of the truck did not see any signs at Whitakers, which was at one end of the project, and two miles from the scene of the accident, there is testimony from another witness that he knew there were two signs there, one saying "the speed limit was 25 miles," and the other, "Road under construction."
While there is evidence that in approaching the bridge from the north the road is practically straight and level for more than one hundred yards, one witness testified: "You come around the curve and drop down a hill and it makes your lights closer to the ground," and another testified: "When you come down that little hill with an empty truck it throws the lights close to you," and again, "When you go down that little hill, it is kinder dark down at the bridge. Your lights don't pick it up 200 feet. You can drive and tell it." *Page 516 
From judgment sustaining demurrer to the evidence as to both defendants, plaintiff appeals to the Supreme Court and assigns error.
The only exceptive assignment on this appeal is to judgment as of nonsuit. C. S., 567. This presents two questions: (1) Is there sufficient evidence of actionable negligence on the part of (a) defendants Ames 
Webb, Inc., and (b) defendants Kiker Yount to require the submission of an issue or issues to the jury with respect thereto? (2) Is there sufficient evidence of negligence on the part of the driver of the truck in which intestate was traveling at the time of his injury and death as insulates any negligence on the part of the defendants, or either of them, as a matter of law?
The first is answered "Yes" and the second "No."
(1) In order to establish actionable negligence, "The plaintiff must show: First, that there has been a failure to exercise proper care in the performance of some legal duty which the defendants owed the plaintiff, under the circumstances in which they were placed; and, second, that such negligent breach of duty was the proximate cause of the injury — a cause that produced the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such result was probable under all the facts as they existed. Whitt v. Rand, 187 N.C. 805, 123 S.E. 84; Ramsbottom v.R. R., 138 N.C. 39, 50 S.E. 448." Templeton v. Kelley, 215 N.C. 577,2 S.E.2d 696.
Measured by the requirements of these principles, the evidence in the instant case, considered in the light most favorable to plaintiff, is sufficient to take the case to the jury on the issue of actionable negligence as above defined. The contractual obligations assumed by each of the defendants as reflected in the provisions quoted in the above statement of the case provide evidence of legal duty which the defendants, and each of them, owed to plaintiff intestate, and others traveling the highway, to exercise ordinary care in providing and maintaining reasonable warnings of and safeguards against conditions existent at the time and place in question — a duty which originated upon the award of the contract and continued until the final acceptance of the work by the State Highway and Public Works Commission.
(2) A nonsuit may not be granted on the ground of insulation of negligence unless "it clearly appears from the evidence that the injury complained of was independently and proximately produced by the *Page 517 
wrongful act, neglect or default of an outside agency or responsible third person." Stacy, C. J., in Smith v. Sink, 211 N.C. 725, 192 S.E. 108, and cases cited. See, also, Powers v. Sternberg, 213 N.C. 41,195 S.E. 88; Ferguson v. Asheville, 213 N.C. 569, 197 S.E. 146.
"Foreseeability is the test of whether the intervening act is such a new, independent and efficient cause as to insulate the original negligent act. That is to say, if the original wrongdoer could reasonably foresee the intervening act and resultant injury, then the sequence of events is not broken by a new and independent cause, and in such event the original wrongdoer remains liable." Brogden, J., in Hinnant v. R. R., 202 N.C. 489,163 S.E. 555. See, also, Harton v. Tel. Co., 141 N.C. 455,54 S.E. 299; Herman v. R. R., 197 N.C. 718, 150 S.E. 361; Beach v. Patton,208 N.C. 134, 179 S.E. 446.
Where two or more proximate causes contribute to the injury, a defendant whose negligent act brought about one of such causes is liable. Albrittonv. Hill, 190 N.C. 429, 130 S.E. 5; Campbell v. R. R., 201 N.C. 102,159 S.E. 327; Johnson v. R. R., 205 N.C. 127, 170 S.E. 120; Lewis v.Hunter, 212 N.C. 504, 193 S.E. 814.
Applying these principles to the case in hand, evidence appears from which the jury may find that, even though the driver of the truck be guilty of negligence contributing to the accident, the conditions existent at the time and scene of the accident were such that an ordinarily prudent person in the exercise of due care could foresee the intervening act and resultant injury. These are questions for the jury under appropriate instructions by the court.
The judgment below is
Reversed.
BARNHILL, J., concurs as to the defendants Ames Webb, Inc., but dissents as to the defendants Kiker Yount.