IRENE B. BAKER, ADMINISTRATRIX OF THE ESTATE OF WALTER GLENN BAKER, v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 1 November, 1950.)

**1. Negligence § 1—**

Negligence is the failure to exercise proper care in the performance of some legal duty which defendant owes plaintiff under the circumstances in which they are placed.

**2. Negligence § 5—**

Proximate cause is that cause which produces the result in continuous sequence and without which it would not have occurred, and one from which a man of ordinary prudence could have foreseen that such result was probable under all the facts as they existed.

**3. Negligence § 17—**

Plaintiff has the burden of showing not only negligence but that such negligence was the proximate cause of the injury.

**4. Negligence § 19a—**

Negligence and proximate cause are questions of law, and when the facts are admitted or established are for the determination of the court.

**5. Master and Servant § 14a—**

The employer is not an insurer of the safety of his employee but is required only to exercise the care which a man of ordinary prudence would exercise under like circumstances for his own safety to provide a reasonably safe place in which to work and such machinery, implements and appliances as are approved and in general use in places of like character.

**6. *Master and Servant § 26*—**

Where plaintiff fails to allege or prove that the workmen's rail motor car of the kind furnished by defendant employer was not approved and in general use under the conditions of work, he may not maintain that the employer was negligent in failing to equip it with hand-holds in addition to the standard hand-holds.

**7. Same—**

Where plaintiff's evidence is to the effect that the workmen's motor rail car in question was equipped with a solid canvas windbreaker over which the occupants could easily look and see anything on the track, such evidence negates the allegation of negligence of the employer in providing a motor car equipped with a canvas windshield containing a small plexiglass opening which was covered with dust, dirt and other foreign substances so as to prevent the occupants of the car from having a clear vision ahead.

**8. Same—**

A railroad employee was killed when the motor rail car on which he was riding struck a dog on the track. *Held:* No presumption of negligence arises from the mere fact of hitting the dog, and since an operator of the car has the right to assume up to the moment of impact that a dog would leave the track in time to avoid a collision unless it was apparently helpless on the track or totally oblivious of its surroundings, there is no showing of negligence in the absence of evidence as to how long the dog had been on the track or as to its condition.

**9. Master and Servant § 25a—**

The basis of liability under the Federal Employers' Liability Act is negligence proximately producing injury.

APPEAL by plaintiff from *Morris, J.,* at February Civil Term, 1950, of JOHNSTON.

Civil action to recover for alleged wrongful death.

Plaintiff alleges in her complaint, *inter alia,* and defendant admits in its answer, substantially these pertinent facts, and same were offered in evidence by plaintiff upon the trial in Superior Court, to wit: That defendant, a common carrier of passengers and freight in and through the State of North Carolina, owned and operated main lines of railway running generally north and south, a portion of which extends from the town of Enfield to and through the town of Weldon, North Carolina; that, in connection with the operation of said railway system, defendant

maintains the railroad right of way, tracks, roadbed and electric signal system, for which purposes defendant owns and operates a large number of motor cars; that on 22 December, 1948, and for many years prior thereto, plaintiff's intestate was in the employment of defendant in connection with the construction, maintenance, and repair of said signal system and in the performance of such other duties as the defendant might lawfully require; that at about 2 :30 o'clock on 22 December, 1948, plaintiff's intestate and his assistant, E. G. McGriff, both employees of defendant, acting in the course and scope of their employment, were riding upon a motor car owned by defendant and assigned to the use of plaintiff's intestate in the performance of his duties; that they were traveling in a northern direction on the defendant's railroad about four and a half miles north of the town of Enfield; that said motor car was designed for the transportation of four employees or less, propelled by a 4-horsepower motor, and the same, in bad weather, was equipped with a canvas windshield, containing an isinglass opening for clear vision near the top; and that at said time no trains were in sight approaching from either north or south and that the roadbed was about straight and level.

Plaintiff also alleges in her complaint that at the said time and place the said motor car was being operated by E. G. McGriff, a fellow servant of plaintiff's intestate; that McGriff was sitting on the rear of the platform of said motor car, having sole and exclusive control of the operation thereof; and that said motor car suddenly and without warning came in contact with a dog or other object or obstruction upon said railway line, which collision caused said motor car to jump the track and hurl plaintiff's intestate beneath it,—resulting in his almost instant death.

Defendants, answering these allegations, just stated above, aver the motor car was under the exclusive control and direction of plaintiff's intestate; that he delegated to his assistant, McGriff, the duty of operating the motor car, and assigned him to a rear seat on the left side of the motor car and selected the right front seat for himself in order that he might maintain a proper lookout and direct McGriff in the operation of the motor car; that said right front seat commanded a clear view of the track and it was the duty of plaintiff's intestate to keep a proper lookout and direct the operation of the motor car for the safety of himself and his assistant; that plaintiff's intestate failed to keep a proper lookout and failed to warn his assistant that a dog was about to leap upon the railroad track, or, said dog suddenly and without warning, leaped in front of the motor car under such circumstances that neither plaintiff's intestate nor his assistant had an opportunity to stop the motor car,— the resulting collision causing it to jump the track and fatally injure the

plaintiff. Except as admitted, the other of said allegations are denied by defendant.

And by way of further answer thereto defendant avers that the motor car was of standard type and design, and in general and approved use on Atlantic Coast Line and other standard railroads; that same was being operated by McGriff in a careful and· prudent manner; and that the collision with the dog was due to negligence of plaintiff's intestate, or was an unforeseeable and unavoidable accident for which defendant is in no wise responsible.

And plaintiff further alleges in her complaint, substantially these acts of negligence as the proximate cause of the death of her intestate: (a) That defendant failed and neglected to provide him a safe place at which to work and safe tools and appliances with which to work, for· that the motor car was not equipped with a hand-hold or otherwise so as to enable him to protect himself in the event the motor car should come in contact with objects or obstructions upon defendant's right of way; which facts were well known to defendant, or in the exercise of ordinary care should have been discovered by it.

(b) That defendant negligently equipped the motor car with a canvas windshield containing a small plexiglass opening which was covered with dust, dirt and other foreign substances so as to prevent (1) the operator of the motor car having a clear and unobstructed view and vision of objects or obstructions upon defendant's railroad tracks, (2) the operator of the motor car, E. G. McGriff, having a clear vision of obstructions, and (3) plaintiff's intestate observing the existence of obstructions or other hazard on said railway tracks which caused a derailment of the motor car and injury to its occupants.

(c) That the operator of the motor car, E. G. McGriff, was, at the time of the collision, and for some time prior thereto, carelessly and negligently looking in a southerly direction, and failed and neglected (1) to keep a lookout ahead for obstructions in the pathway of the motor car, and (2) to take reasonable precaution for the safe operation of the motor car when he saw or by the exercise of ordinary care, should have seen a large dog, either upon, or approaching the railroad ˙track, and neglected to apply any brakes or sound any warning to his fellow servant ·with respect to his rapid approach to the obstruction then upon, or approaching the tracks so as to create a dangerous hazard to plaintiff's intestate.

Defendant, in answer thereto, denies each of the allegations of negligence, and avers otherwise.

Upon the trial in Superior Court E. G. McGriff, as the only witness for plaintiff, testified in pertinent part: "On December 22, 1948, . . . the weather was cloudy and it was cold. Mr. Baker and I were riding

on a motor car . . . . I was sitting on the left hand rear. Mr. Baker was in charge of the car and me but I was actually operating the motor car. Mr. Baker was sitting on the right hand front. . . . The motor car struck a dog on the track and turned sideways and skidded down the track. Mr. Baker fell off the car between the rails and the car passed over him. I was not thrown from the car . . . He was killed. Just prior to the motor car coming in contact with the dog, I was looking back to see if there was anyone coming behind us. The roadbed was straight and level in back for about one-half mile and you could see a train in front . . . a mile. It was not raining at the time of the accident . . . Mr. Baker was sitting . . . in a sideways position . . . facing east, and the car was going north. The windshield in front of the motor car was made of canvas and Mr. Baker was sitting up side of the windshield; it was a windbreaker; it was as wide as the motor car at the bottom and went straight up like a wall; it was around 20 or 22 inches across the top. The car and windshield was in same condition it was when it was furnished to me on this particular day for work; . . . The windshield was made of a solid piece of canvas; you could not see through it. I could see around 20 feet in front but could raise up a little bit and see right in front of the car. I could see better to the left front than to the right front. I was operating the car with my right hand. The controls of the car are more or less in the center of the car. The man who operates them is in the rear . . . at all times. Mr. Baker was not operating the car; he could have pulled the brakes and knocked the gas lever back; the controls were about an equal distance from both of us . . . There was no rail in front of where Mr. Baker was sitting; there was one in front of the motor car; it runs in front . . . kind of fastens around the bottom and comes down on each side. Mr. Baker was sitting in a normal position and the usual position when riding on the car . . . on a board up on top of the motor. It is built up in a cone shape about 24 inches to 26 inches across the top and he was sitting on the front of it. That is a box to sit on and also to cover the motor . . . There is no rail, handbar, nor safety strap from the rear of the car to the front . . . I would say we were traveling about 20 miles an hour . . . I did not see the dog before the collision and the first time I saw him was when I was going back for help. The dog . . . was still alive. From the position which Mr. Baker was sitting he would have to turn and look to see in front of the car; he would have to look over the windshield,—about a 90-degree angle to the left; he would not have to raise up."

Then under cross-examination the witness continued: "The car was assigned to Mr. Baker and I was working under him and the foreman. Mr. Baker was in charge of the motor car. He could elect to operate it or to ride on it. The position at which he was sitting was the forward

observation side of the car. He was sitting sideways and you could look out in any direction from the position which he was sitting by twisting your body or your head. It was part of my duty to look to the back for the approach of trains. It was Mr. Baker's duty to look at the front and see what he could see. He had an unobstructed view of the track on the east side, that is on his right-hand side of the right of way. He could look over this canvas . . . easily . . . and see anything on the track. He could look to the right-hand side of the track and the embankment . . . Mr. Baker made no outcry of any sign of warning or say one word. He was in easy reach of the brake lever and gas lever, just as accessible as I was. He did not attempt to stop the car or halt its progress in any way . . . I have been riding on motor cars since November 1947. I was familiar with this motor car. It is equipped with standard handholds, the same as all other motor cars I have seen. It is in general use by the Coast Line; its brakes were in good condition . . . I did not examine this motor car after the accident but I was there when it was examined. The dog hit on the right-hand front side of the motor car. It was the side Mr. Baker was sitting on and immediately in front of him. There was nothing to obstruct Mr. Baker's view of the dog."

And, on re-direct examination, the witness testified: "I have never worked with any other railroad company other than the Coast Line. I am not familiar with cars, equipment and general type on other railroads. It was just an ordinary hound dog."

At the close of plaintiff's evidence, motion of defendant for judgment as of nonsuit was allowed, and signed by the court.

Plaintiff appeals therefrom and assigns error.

*C. G. Grady and Levinson & Batton for plaintiff, appellant.*

*Abell, Shepard & Wood, Frank G. Kurka, and M. V. Barnhill, Jr., for defendant, appellee.*

WINBORNE, J. This appeal challenges only the judgment as of nonsuit entered in the trial court. As to this, the evidence shown in the case on appeal taken in the light most favorable to plaintiff, as is done in such case, fails to make out a case of actionable negligence,—indeed fails to show any negligence on the part of defendant. *Murray v. R. R.,* 218 N.C. 392, 11 S.E. 2d 326, and cases there cited.

In an action for the recovery of damages for injuries allegedly resulting from actionable negligence, "The plaintiff must show: First, that there has been a failure to exercise proper care in the performance of some legal duty which the defendant owed the plaintiff, under the circumstances in which they were placed; and, second, that such negligent breach of duty was the proximate cause of the injury—a cause that pro-

duced the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such result was probable under all the facts as they existed." *Whitt v. Rand,* 187 N.C. 805, 123 S.E. 84; *Evans v. Construction Co.,* 194 N.C. 31, 138 S.E. 411; *Hurt v. Power Co.,* 194 N.C. 696, 140 S.E. 730; *Thompson v. R. R.,* 195 N.C. 663, 143 S.E. 186; *Templeton v. Kelley,* 215 N.C. 577, 2 S.E. 2d 696; *Gold v. Kiker,* 216 N.C. 511, 5 S.E. 2d 548; *Murray v. R. R., supra,* and numerous other cases.

The principle prevails in this State that what is negligence is a question of law, and, when the facts are admitted or established, the court must say whether it does or does not exist. This rule extends and applies not only to the question of the negligent breach of duty, but also to the feature of proximate cause. *Hicks v. Mfg. Co.,* 138 N.C. 319, 50 S.E. 703; *Russell v. R. R.,* 118 N.C. 1098, 24 S.E. 512; *Lineberry v. R. R.,* 187 N.C. 786, 123 S.E. 1.

In the case in hand the relationship between the defendant and the plaintiff's intestate is that of master and servant, or employer and employee. When such relationship exists, the accepted and well settled rule of law is that the master owes to the servant the duty to exercise ordinary care to provide a reasonably safe place in which to do his work and reasonably safe machinery, implements and appliances with which to work. The master is not an insurer, however. Nor is it the absolute duty of the master to provide a reasonably safe place for the servant to work, or to furnish reasonably safe machinery, implements and appliances with which to work. He meets the requirements of the law in the discharge of his duty if he exercises or uses ordinary care to provide for the servant such a place, or to furnish such machinery, implements and appliances as are approved and in general use in places of like kind, that is, that degree of care which a man of ordinary prudence would exercise or use under like circumstances, having regard to his own safety, if he were providing for himself a place to work, or if he were furnishing for himself machinery, implements and appliances with which to work. This rule of conduct of "the ordinarily prudent man" measures accurately the duty of the master and fixes the limit of his responsibility to his servant. *Murray v. R. R., supra,* and cases there cited. See also *Helms v. Waste Co.,* 151 N.C. 370, 66 S.E. 312; *Eplee v. Ry. Co.,* 155 N.C. 293, 71 S.E. 325.

In the light of these principles, while plaintiff alleges as an act of negligence on the part of defendant a failure to equip the motor car with a hand-hold, the evidence offered by plaintiff is that the motor car in question was equipped with standard hand-holds, and that it was in general use by the defendant. And there is neither allegation nor proof that the motor car, so equipped, was not approved and in general use. See *Grubbs v. Lewis,* 196 N.C. 391, 145 S.E. 769.

And while plaintiff also alleges as an act of negligence the equipment of the motor car with a canvas windshield containing a small plexiglass opening which was covered with dust, dirt and other foreign substances so as to prevent plaintiff's intestate and the operator of the motor car having a clear vision ahead,—the evidence offered by plaintiff is that the windshield was of solid canvas, but that the operator could see over it around 20 feet in front, and by raising up "a little bit" could see right in front of the car,—and that plaintiff's intestate "sitting up side of the windshield," "in a normal . . . and the usual position," "could look over this canvas . . . easily . . . and see anything on the track."

Now we come to the last acts of negligence alleged by plaintiff, the failure of the operator of the motor car to keep lookout ahead for obstructions in its pathway, and to take reasonable precaution for its safe operation when he saw, or by the exercise of ordinary care should have seen, a large dog, either upon or approaching the railroad track.

In reference thereto, this Court has dealt with the subject of a street railway company's liability in tort for the killing of a dog. *Moore v. Electric Co.,* 136 N.C. 554, 48 S.E. 822.

In the *Moore case* the Court laid down these principles: The dog is not included in the category of cattle or livestock, but is a species or subject of property recognized as such by the law, and for an injury to which an action at law may be sustained. But no presumption of negligence on the part of the railway arises from the mere fact of killing of, or injury to a dog by a train being shown. On the other hand, on account of the superior intelligence and traits of character of the dog, an engineer in charge of a moving locomotive is not compelled to keep either as vigilant lookout for the dog, or as great care in the management of his engine or train so as to prevent their injury as he is for cattle or livestock, and is warranted in acting on the belief that a dog on the track apparently in possession of his faculties will avoid danger; that is, the engineer has the right to assume, and to act upon the assumption, that the dog will leave the track, and escape the impending peril of the oncoming train. There is, however, an exception to the principle, that is, when the dog on the track is apparently helpless, or totally oblivious of his surroundings.

Applying these principles to the case in hand, the operator of the motor car was not charged with the duty of anticipating the presence of a dog upon the track; but in the absence of a showing that the dog upon the track was apparently helpless, or totally oblivious of his surroundings, the operator had the right to assume, and to act upon the assumption, even to the moment of impact, that the dog would leave the track. Hence, the failure to stop the motor car would not be an act of negligence. Therefore, since there is no evidence tending to show how long the dog had been on the track, or what he was doing, or what his condition was,

there is a failure of proof of negligence on the part of the operator of the motor car. Compare *Cummings v. R. R.,* 217 N.C. 127, 6 S.E. 2d 837; *Justice v. R. R.,* 219 N.C. 273, 13 S.E. 2d 553; *Mitchell v. Melts,* 220 N.C. 793, 18 S.E. 2d 406. And the evidence is that the impact between the motor car and the dog was the cause of the derailment of the motor car and the resultant death of plaintiff's intestate.

Appellant states in her brief that this action is brought under the Federal Employers' Liability Act. The complaint fails to so expressly declare. But even so, the basis of liability under this act is negligence proximately producing injury. Plaintiff must show something more than a fortuitous injury. *Camp v. Ry. Co., ante,* 487, citing *Tiller v. A. C. L. R. R.,* 318 U.S. 54, 87 L. Ed. 610, 143 A.L.R. 967; *Brady v. Southern Ry.,* 222 N.C. 367, 23 S.E. 2d 334, 320 U.S. 476, 88 L. Ed. 239; *Ellis v. Union Pacific R. R. Co.,* 329 U.S. 649.

For reasons stated, the judgment as of nonsuit is

Affirmed.