OLIVE O'NEAL SPENCER v. McDOWELL MOTOR COMPANY, INC., AND CHARLIE IVES.

(Filed 8 October, 1952.)

1. **Automobiles § 16—Instruction held for error in not applying law to evidence in regard to duties of pedestrian on highway.**

Where the evidence is conflicting as to whether plaintiff pedestrian was walking on her left-hand side of the highway facing traffic or on her right-hand side of the highway, *held* the court should charge the jury on the various aspects of the evidence to the effect that if she were walking on her left-hand side of the highway it was her duty to yield the right of way to vehicles upon the roadway, and that if she were walking on her right-hand side it was in violation of the statute, G.S. 20-174 (a) (d), and an instruction that the duty of a pedestrian to yield the right of way applies

only to traffic approaching from the front when he is walking on his left side of the highway, must be held for error.

## 2. Negligence § 20—

An instruction which in effect charges that if defendant failed to avail himself of the last clear chance to avoid the injury to answer the issue of contributory negligence in the negative, must be held for error as making the conduct of the defendant determinative of the question of whether plaintiff was contributorily negligent.

## 3. Automobiles § 24½ e—

Chap. 494, Session Laws of 1951, providing that the registration of a car should be *prima facie* evidence of ownership and that ownership should be *prima facie* evidence that the vehicle was being operated and used with the authority, consent and knowledge of the owner, applies to an accident occurring prior to the effective date of the statute unless action was pending at the time of its effective date. G.S. 20-71.1.

## 4. Actions § 9—

An action is pending from the time it is commenced, and an action is commenced by issuance of summons.

## 5. Statutes § 10—

Where a statute expressly provides that it should not apply to pending litigation, such limitation will not be enlarged to exclude from its operation causes of action arising prior to its effective date when action thereon is not brought until subsequent to its effective date. The maxim *expressio unius est exclusio alterius* applies.

## 6. Same: Constitutional Law § 24—

A statute creating a presumption of evidence may be given retroactive effect, since there is no vested right in procedure.

## 7. Automobiles § 24½ f: Trial § 31b—

Where a defendant sought to be held under the doctrine of *respondeat superior* introduces in evidence bill of sale, recorded conditional sales contract, etc., tending to show that at the time of the accident in suit defendant had sold the automobile involved in the accident, it is error for the trial court to fail to declare and explain the law arising upon such evidence even in the absence of request for instructions.

APPEAL by defendants, McDowell Motor Company and Charlie L. Ives, separately, from *Williams, J.,* at February Term, 1952, of PASQUOTANK.

Civil action instituted 13 August, 1951, to recover damages for personal injuries allegedly resulting from actionable negligence when hit by automobile operated by defendant Charlie Ives.

For purposes of this appeal the following statement of the case is deemed sufficient for proper consideration of points on which decision here turns.

The time of the accident, the subject of this action, was about 11:00 o'clock on morning of 30 April, 1951, on the highway between Elizabeth

City and Weeksville. This highway runs in general north-south direction. It has a paved surface 20 feet in width with shoulders 4 feet in width. Plaintiff lived on the west side of the highway about a mile and a half below Elizabeth City. South of her house there was a curve in the highway. Her mailbox was north of the curve but south of her house, and on the east side of highway. A 35-mile speed limit sign was on the east side of the highway just north of her mailbox. Mrs. Johnson lived just north of plaintiff's home. She too had a mailbox on east side of highway.

Defendant Ives was operating a red convertible automobile coming from direction of Weeksville toward Elizabeth City.

As to the position of plaintiff at time of accident: Plaintiff alleges in her complaint that she "was walking southwardly on the east shoulder of" highway.

On the other hand, defendant Motor Company denies in its answer the allegations of complaint in which the above was alleged. And the defendant Ives, in his answer, admits that "plaintiff was walking, not southwardly but northwardly, on the east shoulder of said highway."

Upon the trial in Superior Court plaintiff offered evidence tending to show: That about 11 o'clock of said date she was going to her mailbox; that no traffic was coming, and quoting her: "I crossed the highway to the east shoulder; I turned and was walking left facing traffic, going south, and I saw a red convertible coming. After seeing the convertible I don't remember anything else until I regained consciousness . . . As to the direction in which the red convertible was coming, I just can't place it. I just saw it coming facing me from the direction of Weeksville, towards Elizabeth City. I was walking just to the north of the sign when I first saw the automobile. I was on the east shoulder in the dirt. I just saw the car coming around the curve, and that is all I can remember."

Then on cross-examination plaintiff continued her testimony by saying: "I was about 10 feet north of the State Highway sign when I saw the car coming . . ."

Then on re-direct examination plaintiff testified: "After I got on the east shoulder of the road I did not go back upon the paved portion of the road. I was on the grass when I was hit right on the edge of the ditch."

W. T. Hawkins, State Highway Patrolman, witness for plaintiff, testified: "I had a conversation with him (Ives) at that time. He said he was coming north to Elizabeth City, and this woman stepped out in the road in front of him, and he lost control, and hit the ditch."

And defendant Ives testified: ". . . Mrs. Spencer was on the shoulder of the road . . . when I first saw Mrs. Spencer on the highway. She was standing still, she was in front of her house and kind of an angle to me, facing the west." And, again, "As I came up to the scene of the accident

Mrs. Spencer was standing on the shoulder on the far side of the highway from her home, and she was facing more towards Elizabeth City than she was in the direction from which I was coming."

Plaintiff further alleges in her complaint, and defendant Ives admits in his answer, but defendant Motor Company denies in its answer, that at the time and place of the accident the automobile, being driven by Ives, was owned by defendant Motor Company, and carried thereon dealer's license plate issued to the Motor Company by the North Carolina Department of Motor Vehicles; and that Ives was in the employment of defendant Motor Company, acting as its servant, agent and employee in the furtherance of its business.

And upon the trial plaintiff offered evidence tending to show that the records of the North Carolina Motor Vehicle Department failed to show registration of a 1951 Ford convertible to Charlie Ives of Pasquotank County, but that 1951 Dealer's Tag D-11113, the tag on the red convertible operated by defendant Ives at the time of the collision with plaintiff, was issued to defendant Motor Company prior to 30 April, 1951, and remained in its name through and after 30 April, 1951.

On the other hand, defendant Motor Company avers that defendant Ives was the owner and operator of the automobile in question; that he was temporarily using dealer's license plate issued to it; and that he, Ives, was on his own private business or pleasure, and was in no way on any business of it or any business connected with it.

And upon the trial defendant offered in evidence, among other things, a duplicate of original bill of sale, identified as Exhibit 1, date 31 March, 1951, from defendant Motor Company to defendant Ives, together with public record of Pasquotank County of a conditional sales contract dated 3 April, 1951, and filed for registration 13 April, 1951, from defendant Ives, as purchaser, and defendant Motor Company, as seller, identified as Exhibit 2, all in respect to the automobile operated by defendant Ives at the time of the accident.

And in this connection defendant Motor Company offered evidence tending to show that after 3 April, 1951, defendant Ives kept the automobile in question in his possession; that defendant Motor Company assigned purchase money note and contract to Commercial Credit Corporation; and that when the sale of this car was made sales tax of $15.00 was paid by the Motor Company to the State of North Carolina.

These issues were submitted to and answered by the jury as shown, to wit:

"1. Was the plaintiff injured by the negligence of the defendant, Charlie Ives, as alleged in the complaint? A. Yes.

"2. Was the plaintiff injured by the negligence of the defendant, McDowell Motor Company, as alleged in the complaint? A. Yes.

"3. Did the plaintiff by her own negligence contribute to her injuries, as set up in the answer? A. No.

"4. What damages, if any, is the plaintiff entitled to recover? A. $3,500.00."

From judgment signed in accordance with the verdict each defendant appeals to Supreme Court, and assigns error.

*Wilson & Wilson for plaintiff, appellee.*
*John H. Hall for defendant Motor Company, appellant.*
*W. C. Morse, Jr., for defendant Ives, appellant.*

WINBORNE, J.   I.  The appellant Motor Company assigns as error, among others, portions of the charge as given by the court in respect to the third issue, that is, the issue as to contributory negligence of plaintiff (assignments of error numbers 9 and 10 based on its exceptions 24 and 26), and to the failure of the court to declare, explain and apply the law arising on the evidence on the third issue, particularly as it concerns or is addressed to the statute requiring pedestrians to walk on the extreme left-hand side of the highway and yield the right of way to approaching traffic, as provided for in G.S. 20-174 (a).  (Assignment of error number 13 based on exception 29.)  And the appellant Ives also assigns as error the same portions of the charge as so given.  (Assignments 3 and 4 based on his exceptions 12 and 13.)  These exceptions are well taken.

In this connection it is appropriate to turn to an act passed by the General Assembly, Public Laws 1937, Chap. 407, Article XI, now Part 11 of Chap. 20 of General Statutes, pertaining to rights and duties of pedestrians in respect to streets and highways in this State.

In Sec. 133 of the above Act, now G.S. 20-172, it is declared that "pedestrians shall be subject to traffic control signals at intersections as theretofore declared in this Act, but at all other places pedestrians shall be accorded the privileges and shall be subject to the restrictions stated in this article."  Then, after defining in Sec. 134, now G.S. 20-173, pedestrians' right of way at cross-walks, it is further declared in Sec. 135, now G.S. 20-174, that "(a) Every pedestrian crossing a roadway at any other point than within a marked cross-walk or within an unmarked cross-walk at an intersection shall yield the right of way to all vehicles upon the roadway," and that "(d) it shall be unlawful for pedestrians to walk along the traveled portion of any highway except on the extreme left-hand thereof, and such pedestrian shall yield the right of way to approaching traffic."

The trial court, after reading to the jury only the provisions of sub-section (a) of Sec. 135, now G.S. 20-174 (a) above quoted, charged as follows: "I instruct you in that respect, gentlemen, that the provisions of

that statute do not require a pedestrian on the highway to yield the right of way; the duty is imposed upon him under the terms of that statute to yield the right of way to traffic approaching from the front as they are going down the left side of the highway." This is the portion to which exception 24 relates.

In this connection there is evidence in the record from which it may be inferred that plaintiff was walking north along the highway on her right-hand side. Defendant Ives testified that when he first saw plaintiff she was facing more towards Elizabeth City than she was in the direction from which he was coming. And plaintiff herself testified: "I crossed the highway to the east shoulder; I turned and was walking left facing traffic, going south."

True, plaintiff also testified, "I just saw it (the convertible) coming facing me from the direction of Weeksville, towards Elizabeth City." This testimony is susceptible of the inference, as plaintiff contends, that she was walking south on her left-hand side of the highway.

Thus it was incumbent upon the trial court to give appropriate instruction in the light of both inferences—that is, (1) the inference that plaintiff was walking on her left-hand side of the highway, and (2) the inference that she was walking on her right-hand side of the highway, as the jury may find the facts to be.

If she were walking on her left-hand side the statute says she "shall yield the right of way to approaching traffic." Hence we are constrained to hold that the portion of the charge to which exception is here taken reads into the statute more than it contains, and is calculated to mislead and confuse the jury.

On the other hand, if plaintiff were walking north on her right-hand side of the highway, this was in violation of the statute, G.S. 20-174 (d), and would be evidence of negligence to be considered in connection with surrounding circumstances as to whether she used reasonable care and caution commensurate with visible conditions. See *Miller v. Motor Freight Lines,* 218 N.C. 464, 11 S.E. 2d 300; *Tysinger v. Dairy Products Co.,* 225 N.C. 717, 36 S.E. 2d 246; also *Templeton v. Kelley,* 215 N.C. 577, 2 S.E. 2d 696; *S. c.,* 216 N.C. 487, 5 S.E. 2d 555.

As to Motor Company's Assignment of Error No. 10: The court, after charging on the burden of proof as to the third issue, stated the contentions of the plaintiff, and of the defendants as to how the issue should be answered in keeping with their respective contentions. Then the court instructed the jury: "If . . . you find by the greater weight of the evidence that at the time and place in question Mrs. Spencer, the plaintiff in this action, failed to exercise that degree of care a person of ordinary prudence would exercise in the position she occupied on the shoulder of the road as the car was approaching her and passed her and that by reason

of the position in which she assumed or placed herself she caused the car to collide with and inflicting the injuries sustained about which she complains, or that was the proximate cause, it would be your duty to answer that issue YES; or if you find by the greater weight and when I say 'proximate cause' I mean contributing as a proximate cause or one of the proximate causes of the collision and injury, or (U) if you find by the greater weight of the evidence that at the time and place in question the plaintiff Mrs. Spencer was walking on the right side of the highway in the direction in which she was going, and that in so doing she was acting in violation of the statute which I read to you, and that she was in plain view of the defendant Ives operating the automobile, or where, with the exercise of reasonable care, she could have been seen or should have been seen; and that Ives negligently and carelessly failed to exercise that degree of care a person of ordinary prudence would exercise or due care to prevent the automobile from colliding with her, and that such negligence on his part resulted in and approximately caused the collision and injury, it would be your duty to answer that issue No, unless you so find you would answer it YES. (V)."

The portion between letters U-V is subject of Exception 26.

In respect to this charge, the conduct of the defendant Ives is not the determinative factor as to whether plaintiff violated her duty, and whether such violation was a proximate or contributing cause of her injury. Hence the instruction, as so given, is erroneous.

II. Appellant Motor Company also excepts to portions of the charge in respect to the second issue, as to whether plaintiff was injured by its negligence, as alleged in the complaint, to which portions Assignments of Error 3 to 7, both inclusive, based upon exceptions 18 to 22, both inclusive, relate. These exceptions are untenable. They challenge the ruling of the court that the provisions of Chapter 494 of 1951 Session Laws of North Carolina are applicable to case in hand. This chapter is entitled "An Act to provide New Rules of Evidence in Regard to the Agency of the Operator of a Motor Vehicle Involved in Any Accident." It is made a new section of Chapter 20 of General Statutes and is designated G.S. 20-71.1. It provides in Sec. 1 that "(a) In all action to recover damages for injury to the person or to property or for the death of a person, arising out of an accident or collision involving a motor vehicle, proof of ownership of such motor vehicle at the time of such accident or collision shall be *prima facie* evidence that said motor vehicle was being operated and used with the authority, consent, and knowledge of the owner in the very transaction out of which said injury or cause of action arose."

"(b) Proof of the registration of a motor vehicle in the name of any person, firm, or corporation, shall for the purpose of any such action, be *prima facie* evidence of ownership and that such motor vehicle was then

being operated by and under the control of a person, for whose conduct the owner was legally responsible, for the owner's benefit, and within the course and scope of his employment; Provided, that no person shall be allowed the benefit of this section unless he shall bring his action within one year after his cause of action shall have accrued."

In Sec. 2 it is declared that "the provisions of this Act shall not apply to pending litigation." And in Sec. 4 it specifies that "this Act shall become effective from and after July 1, 1951."

While appellant Motor Company does not contend that the Legislature is without authority to change the rules of evidence in the manner revealed in the language of the 1951 Act, as above stated, it contends that under rules of interpretation the Act should not be given retroactive effect; that is, as to existing causes of action, as the trial court did in the case in hand. It seems clear, however, from the language of the Act that the Legislature intended that on and after 1 July, 1951, the only limitation upon the applicability of the Act is that it shall not apply to pending litigation, that is, litigation then pending. It is so expressly provided.

An action is pending from the time it is commenced until its final determination. And a civil action is commenced by the issuance of a summons. See among others the case *McFetters v. McFetters,* 219 N.C. 731, 14 S.E. 2d 833.

Moreover, the maxim *expressio unius est exclusio alterius,* that is, that the expression of one thing is the exclusion of another, applies. From the fact that the Legislature expressly provided that the provisions of the Act shall not apply to pending litigation, it may be implied that it should apply in all other cases.

In *Tabor v. Ward,* 83 N.C. 291, the Court declares that laws which change the rules of evidence relate to the remedy only, and are at all times subject to modification and control by the Legislature, and that changes thus made may be made applicable to existing causes of action. And it is pertinently stated: "Retrospective laws would certainly be in violation of the spirit of the Constitution if they destroyed or impaired vested right," but that "one can have no vested right in a rule of evidence when he could have no such right in the remedy," and that "there is no such thing as a vested right in any particular remedy." See also *Byrd v. Johnson,* 220 N.C. 184, 16 S.E. 2d 843; *B-C Remedy Co. v. Unemployment Compensation Commission,* 226 N.C. 52, 36 S.E. 2d 733; Stansbury's N. C. Evidence, Sec. 6; *Wallace v. R. R.,* 104 N.C. 442, 10 S.E. 552.

Indeed, the case of *Lowe v. Harris,* 112 N.C. 472, 17 S.E. 539, on which this appellant relies, is distinguishable from case in hand.

III. Appellant Motor Company also assigns as error the failure of the trial court to declare and explain the law arising on the evidence, on the

second issue, particularly as it concerns or is addressed to the defendant's documentary evidence, especially the invoice or conditional sales contract, defendant's Exhibits 1, 2 and 3. This is Motor Company's Assignment of Error 14 based on its exception 30.

In the recent case of *Lewis v. Watson,* 229 N.C. 20, 47 S.E. 2d 484, this Court in opinion by *Ervin, J.,* reviewed decisions of this Court on the application of provisions of the statute G.S. 1-180. Headnote 1 epitomizes the case as follows: "G.S. 1-180 requires the trial court to instruct the jury as to the law upon all substantial features of the case without request for special instructions, and a general statement of the law is not sufficient, but the court must explain the law as it relates to various aspects of the evidence adduced and to the particular issues involved." In the light of this interpretation of the statute applied to case in hand, we are of opinion and hold that the point here made by the appellant is well taken.

IV. It may be noted that exceptions to the denial of motions of defendants for judgments of nonsuit are not assigned as error, nor are they brought up for review. Moreover, since there must be a new trial, and the matters to which other assignments of error are directed may not then recur, we deem it unnecessary to give to them express consideration.

For reasons stated, let there be a

New trial.